PARSONS *v.* CITY OF GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS—CITY CHARTER—LOCAL ASSESSMENTS —VALIDITY.

Under the charter of Grand Rapids an assessment for a street improvement is not void for the reason that the contract was let and executed, the bond approved, and the work completed before any opportunity was given the landowners to be heard.

2. SAME—NOTICE TO TAXPAYERS.

In proceedings under the charter of Grand Rapids to improve streets at the cost of property benefited, the only notice required to be given to property owners is that provided after

the assessments are reported, the council having the sole power to require and make the improvements, and the taxpayer being concerned only in the apportionment of the cost thereof.

3. SAME—STORM SEWER.
   The council in improving a street has authority to require storm water sewers as a part of the improvement.

4. SAME—ASSESSMENTS—SEPARATE PARCELS.
   Where a widow occupied two parcels of farm land together, one of which she owned in fee and held a dower estate in the other, an assessment of both tracts in one parcel for street improvements was not erroneous.

Appeal from the superior court of Grand Rapids; Newnham, J. Submitted June 22, 1905. (Docket No. 50.) Decided September 28, 1905.

Bill by Walter S. Parsons and others, heirs at law of the estate of Abby A. Parsons, deceased, against the city of Grand Rapids to restrain the collection of a tax for street improvements. From a decree 'dismissing the bill, complainants appeal. Affirmed.

*Holmes & Holmes*, for complainants.

*Taggart & Taggart*, for defendant.

HOOKER, J. The bill of complaint in this cause was filed in August, 1898. Abby A. Parsons, a widow, since deceased, was the sole complainant. Its object was to restrain the collection, by sale of the premises, of an assessment for street improvements theretofore made against her interest in certain real estate that had belonged to her deceased husband at the time of his death, her interest in which consisted of an estate in fee of a portion and a dower right of another part; both being fully described in the bill. All were farm lands and parts of one tract, which was the home of herself and husband while he lived. The bill states that she was the person to pay the taxes assessed against said property. An answer was

filed. Abby A. Parsons died on March 18, 1899, and an order reviving said suit in the name of Hiram G. Luce, special administrator, was made August 2, 1899.

On January 4, 1902, upon a showing that said Luce had been discharged as special administrator, an order was made reviving the suit in the names of the present parties complainant; they being heirs at law of Abby A. Parsons. The bill was dismissed after a hearing of the merits on April 22, 1904, and an appeal has been taken by one or more of the complainants.

According to the claim of the complainants' counsel, as shown in their brief, this improvement was unnecessary and ill-advised; the soil being sandy and not requiring a sewer. Witnesses so testified, giving their opinion, also, that the work was poorly done. They also allege that the assessment was void by reason of noncompliance with the law under which they were ordered and made.

Kalamazoo avenue runs northwest and southeast, joining Burton avenue at the south quarter post of section 5, according to the map furnished by complainants' counsel. The land in which Abby A. Parsons had a dower interest is the S. E. ¼ of the S. E. ¼ of section 5, and it is contiguous to Burton avenue, lying north of said avenue. Its southwest corner extends to, or within a few rods of, Kalamazoo avenue. West of this parcel is the land which she claimed to own in fee, which is all of the S. W. ¼ of section 5, lying east of Kalamazoo avenue, which it abuts.

On June 7, 1897, a resolution was adopted by the common council that the grading and graveling with pit gravel of Kalamazoo avenue from the south line of Fifth avenue to the north line of Burton avenue, including the construction of vertical stone curbing and necessary bridges, culverts, catch-basins, approaches, and cesspools, was a necessary public improvement. On June 14th a motion to reconsider this resolution was adopted. Thereupon, as substitutes for such resolution, two resolutions were offered and adopted. One of these related to a pro-

posed improvement of Kalamazoo avenue from Fifth avenue to Burton; the other, from Boston avenue to Burton avenue. We find but one of these resolutions in the record. It is as follows:

"By Ald. Verkerke:

"'Resolved, by the common council of the city of Grand Rapids, that the grading and graveling of Kalamazoo avenue, a public street in the city of Grand Rapids, from the north line of Boston avenue, a public street in said city, to the north line of Burton avenue, a public street in said city, including the construction of the necessary bridges, culverts, gutters, cross-walks, manholes, catch-basins, approaches, storm water sewers, and cesspools in portion of said Kalamazoo avenue, is a necessary public improvement. And be it further

"'Resolved, that the expense of said public improvement shall, pursuant to title 5 of the charter of the said city, be defrayed by assessments payable in five equal annual installments in the manner in said title 5 provided for.' Adopted."

On June 26th a final estimate of $5,600 for this improvement was filed. On June 28th the clerk presented a contract, which was approved by the council, and the mayor was directed to execute it, which he did. On September 7th a resolution was adopted, directing the mayor to appoint a committee of three from the council to locate a district to be assessed for the improvement to Kalamazoo avenue between Boston and Burton avenues. Presumably this was done, for the report of such committee appears in the record, and also its adoption on September 13th. A petition to have the roadway made 28 feet wide, instead of 18, and a remonstrance against such change, were filed and referred to the aldermen of the ward. This was on September 27th. On October 25th, under a suspension of the rules, the resolution and order for the improvement of Kalamazoo avenue from Boston to Burton avenues was reconsidered, and substitutes were adopted as follows:

"'Whereas, it has been determined by the common council of the city of Grand Rapids, by resolution, that the

grading and graveling of Kalamazoo avenue, a public street in the city of Grand Rapids, from the north line of Boston avenue, a public street in said city, to the north line of Burton avenue, a public street in said city, including the construction of the necessary bridges, culverts, gutters, cross-walks, manholes, catch-basins, approaches, storm water sewers, and cesspools in said portion of said Kalamazoo avenue, is a necessary public improvement; and,

" ' Whereas, the board of public works in and for the city of Grand Rapids has estimated the expense of said improvement, including the cost of such estimates and plans and assessments incident thereto, at the sum of five thousand six hundred (5,600) dollars; therefore,

" ' Resolved by the common council of the city of Grand Rapids, that the entire of such expense be assessed upon the owners or occupants of lands and houses benefited by such improvement. And be it further

" ' Resolved, that the following portion of said city be deemed to be benefited by said public improvement to the entire extent of said estimatedexpense, and proper to be assessed to the whole expense thereof, to wit:

" 'All lots, parts of lots, and pieces of land included within the following boundaries: Commencing at the intersection of the easterly line of Kalamazoo avenue and the north line of Boston avenue; thence southerly along the said easterly line to the south line of Boston avenue, thence east along said south line to a line parallel with and distant 100 feet from the said easterly line of Kalamazoo avenue; thence southeasterly along said parallel line to a line parallel with Boston avenue and distant 100 feet therefrom; thence east along said parallel line to the east limits of said city; thence south along said east limits to the north line of Burton avenue; thence west along the north line of said Burton avenue to the easterly line of the Detroit, Grand Rapids & Western Railroad right of way; thence northwesterly along said line last mentioned to the north and south quarter line of section 5, township 6 north, range 11 west; thence north along said quarter line to a point 150 feet westerly at right angles to the southwesterly line of Kalamazoo avenue; thence northwesterly, parallel with Kalamazoo avenue, to a line drawn through the place of beginning at right angles to the easterly line of Kalamazoo avenue; thence northeasterly to the place of beginning, excepting from the above-described district all public streets and alleys.' Adopted.

"By Ald. Gibson: Order relative to the improvement of Kalamazoo avenue from Boston avenue to Burton avenue:

"'Whereas, the common council of the city of Grand Rapids did, by the affirmative vote of five-sixths of all the aldermen-elect of said common council, resolve to make the following public improvements in said city, viz.: The grading and graveling of Kalamazoo avenue, a public street in the city of Grand Rapids, from the north line of Boston avenue, a public street in said city, to the north line of Burton avenue, a public street in said city, including the construction of the necessary bridges, culverts, gutters, cross-walks, manholes, catch-basins, approaches, storm water sewers, and cesspools in said portion of said Kalamazoo avenue; and

"'Whereas, said common council has determined to make such public improvements; and

"'Whereas, the board of public works in and for the city of Grand Rapids has estimated the expense thereof at the sum of five thousand six hundred (5,600) dollars, including the costs of estimates, plans, and assessments incident thereto: It is thereupon ordered that the following portion of said city is deemed to be benefited by said public improvement to the entire extent of said estimated expense and proper to be assessed for the whole expense thereof, to wit:

"'All lots, parts of lots, and pieces of land included within the following boundaries: Commencing at the intersection of the easterly line of Kalamazoo avenue and the north line of Boston avenue; thence southerly along the said easterly line to the south line of Boston avenue; thence east along the said south line to a line parallel with and distant 100 feet from the said easterly line of Kalamazoo avenue; thence southeasterly along said parallel line to a line parallel with Boston avenue and distant 100 feet therefrom; thence east along said parallel line to the east limits of said city; thence south along the said east limits to the north line of Burton avenue; thence west along the north line of said Burton avenue to the easterly line of the Detroit, Grand Rapids & Western Railway right of way; thence northwesterly along the said line last mentioned to the north and south quarter line of section 5, township 6 north, range 11 west; thence north along said quarter line to a point 150 feet westerly at right angles from the southwesterly line of Kalamazoo avenue;

thence northwesterly, parallel with Kalamazoo avenue, to a line drawn through the place of beginning at right angles to the easterly line of Kalamazoo avenue; thence northeasterly to the place of beginning—excepting from the above described district all public streets and alleys.

" 'And that the board of assessors of the city of Grand Rapids, who by the charter of said city are constituted commissioners for the purpose, be, and they are hereby, directed to make said assessments upon all owners or occupants of lands and houses within the district aforesaid in proportion, as nearly as may be, to the advantage which each shall be deemed to acquire by the making of such public improvement; and it is further ordered and directed that said commissioners shall divide each assessment on the assessment roll so to be made into five equal parts, and that said commissioners meet for the purpose of making such assessment on Friday, the 29th day of October, 1897, at 10 o'clock in the forenoon, at the office of the city clerk.' Adopted.

" January 10, 1898.

" The following assessment roll, heretofore returned by the assessors and filed in the office of the city clerk, was presented by the clerk: The improvement of Kalamazoo avenue from Boston avenue to Burton avenue.

"Ald. Verkerke moved to accept the roll, and that further consideration of the same be postponed, and Monday evening, January 17, 1898, at the session of the common council on said evening, be designated as the time, and the common council rooms in the city of Grand Rapids as the place, for hearing appeals therefrom, and the city clerk be instructed to give notice of said time and place of hearing appeals, and of the names being returned to his office to be published in the Grand Rapids Herald, a daily public newspaper, printed, published, and circulated in the city of Grand Rapids, for at least two successive days previous to said January 17, 1898. Carried.

" January 17, 1898.

" The clerk presented for further consideration and for hearing appeals the assessment roll for the improvement of Kalamazoo avenue from Boston avenue to Burton avenue. Appeals being presented by Sarah S. Fisk, Mrs. Abby A. Parsons, Margaret Powers, and others, Ald. Gibson moved that the same be referred to a special committee of three to be appointed by the mayor, and that further consideration of the roll be postponed for one week.

Carried. The mayor appointed Ald. Verkerke, Gibson, and Slocum as such committee.

"January 24, 1898.

"The clerk presented for further consideration the assessment roll for the improvement of Kalamazoo avenue from Boston avenue to Burton avenue. Ald. Verkerke moved that further consideration of the roll be postponed for one week. Carried. Ald. Verkerke moved to reconsider the vote on his motion to postpone consideration on the assessment roll for the improvement of Kalamazoo avenue. Carried. Ald. Verkerke then moved the following as a substitute for his original motion: That further consideration of the roll be postponed one week, and that the roll be laid on the table, and that the committee be given further time for the hearing of appeals. Carried.

"January 31, 1898.

"The clerk presented for further consideration the roll for the improvement of Kalamazoo avenue from Boston avenue to Burton avenue. Thereupon Ald. Verkerke, the chairman of the committee having the matter in charge, asked that the committee be granted one week more time. On motion, time asked for was granted.

"February 7, 1898.

"The clerk presented for further consideration the assessment roll for the improvement of Kalamazoo avenue from Boston avenue to Burton avenue. Thereupon Ald. Verkerke, chairman of the committee having the appeals from the assessments in said roll in charge, presented the following report:

"'To the Honorable the Mayor and the Common Council of the City of Grand Rapids.

"'*Gentlemen:* Your special committee, to whom was referred the various appeals from the assessment roll for the improvement of Kalamazoo avenue from Boston avenue to Burton avenue, respectfully report that the same has had careful consideration. While we find the assessments on said roll rather burdensome, we find it equitably apportioned according to benefits. We therefore recommend that the appeals be denied and the roll ratified and confirmed.

"'John Verkerke,
"'W. H. Gibson,
"'C. E. Slocum,
"'Special Committee.'

"Adopted."

The foregoing shows that, while many measures were adopted and reconsidered, the following proceedings were taken:

1. A resolution of necessity for the improvement on June 14th, and that the cost be assessed on landowners.

2. The filing of an estimate on June 26th.

3. The appointment of a committee to determine an assessment district on September 7th.

4. A report of the committee and its adoption on September 13th.

5. The entry in its minutes required by section 2 of title 5 of the charter, which describes the improvement, declares its necessity, states the proportion to be assessed on landowners to be benefited, specifies the whole sum to be assessed, and the portion of the city deemed benefited. This was done October 25th.

6. The entry of the order required by section 5 of title 5 of the charter.

An appeal was taken from the assessment which followed, and this was heard and determined adversely to complainants.

It is claimed that the assessment is void for the reason that the contract was let and executed, bond approved, and work completed before any opportunity was given the landowners to be heard. The answer admits that the contract was let and signed, and the contractor was ordered to commence work at once, on July 3d. By its terms the work was to be finished by September 1st, following. It is stated, and not denied, that we discover, that the work was done according to the terms of the contract, and before any steps were taken to determine the assessment district, and before the action of October 25th. It seems to have been the understanding of the council that, upon declaring the necessity of certain street improvements, it might go on and make them and afterwards take the necessary steps to assess the cost upon the landowners of the vicinity, and, as already stated, it completed this work before it took any step to determine the district to be assessed. The charter confides to the council the power to require and make street improvements. It does not re-

quire it to submit the question to the taxpayers, or give them an opportunity to be heard in relation thereto; but, having declared the necessity, it may proceed with the work, anticipating the collection of assessments and taxes —a method pointed out in subdivision 1 of section 2 of title 5 of the charter. The only notice to the citizen is that provided after the assessments are reported, which he has a right to have, and which relates to his assessment, and to that only. We are of the opinion that the proceedings up to and including the assessment were regular, and that they should not be set aside for the reason stated, nor for the reason that the work was done before the assessment was made or the assessment district determined upon.

We think it was competent for the council to include in its resolutions storm water sewers. It did this in its substitute adopted June 14th, and we must assume that the resolution reflected its judgment, whether it acted upon the recommendation of the city engineer or not. It was a legislative act, the validity of which does not depend upon what some court of justice may think of its wisdom, or upon the want of personal knowledge of individual members of the council.

It is claimed that this assessment is void because the complainants' land was assessed as one parcel, while she held different estates in two parcels (though occupied as one), one of which abutted upon the street, while the other did not. It seems to be assumed that land not abutting upon a street is not benefited by street improvements, or, if at all, not as much as lands which abut. It is doubtless generally true that distinct and separate parcels must be assessed separately, but this is as much a matter of occupancy and use as of title. A home covering two lots may be assessed as a whole, or a farm including two 40-acre lots may be assessed as one parcel. The fact that the owner has different estates does not make separate assessments necessary. Counsel's brief states that "every individual foot of adjacent property

extending back half a mile was assessed at an amount equal to the abutting property." We are not impressed by the contention that mere separation from the street by a narrow strip should make property exempt from assessment, when other adjacent property, not so separated from the street, would not be. Benefits depend upon something more substantial than mere occupancy or ownership, which are necessarily temporary.

We are asked to sit in review of the judgment of the assessing board, but we cannot do that. The power of assessment is vested elsewhere. We think that the claim of fraud is not sustained by the proof. It was competent to include the storm sewer with the other improvements. It was a part of them, as it was a means of expeditiously removing water from the highway. Having discussed the questions that seem most meritorious, we omit allusion to others, which do not require it.

The decree is affirmed, with costs.

McAlvay, Blair, Montgomery, and Ostrander, JJ., concurred.