STATE BOARD OF EDUCATION v GARDEN CITY SCHOOL
DISTRICT

1. Schools and School Districts—Students—Instruction—Statutes.

A school district board of education has a clear legal duty to comply with the statute and provide 180 days of student instruction during a school year, if possible (MCLA 340.575, 388.1113[2], 388.1201[2]).

2. Mandamus—Discretion—Public Officials—Clear Legal Duty.

Mandamus is a discretionary writ and will issue against public officials only to compel the enforcement of a clear legal duty.

3. Mandamus—Clear Legal Right—Clear Legal Duty—Ministerial Act—Discretion.

Mandamus will issue where plaintiffs seeking the writ have a clear legal right to performance of the specific duty sought to be compelled and defendants have a clear legal duty to perform such act, which must be a ministerial act, prescribed and defined by law with such precision and certainty that nothing is left to the exercise of discretion or judgment.

4. Mandamus—Courts—Discretion—Appeal and Error.

State appellate courts will not interfere with a trial court's refusal to issue a writ of mandamus unless it is evident that the refusal constitutes a clear abuse of discretion.

Appeal from Wayne, Charles Kaufman, J. Submitted Division 1 May 12, 1975, at Detroit. (Docket No. 22756.) Decided June 25, 1975.

References for Points in Headnotes
[1] 68 Am Jur 2d, Schools §§ 227, 233.
[2, 3] 52 Am Jur 2d, Mandamus §§ 34, 35, 40, 64, 72, 73.
Court's control over mandamus as means of avoiding the enforcement of strict legal right to the detriment of the public. 113 ALR 209.
[4] 52 Am Jur 2d, Mandamus § 40.

Complaint for mandamus by the State Board of Education against the Garden City School District and Kenneth W. Carman, John O. Parry, Armen Barsamian, Delora Yory, Gerald D. Engwis, Russell D. Millar and Frank J. Wanderski, members of the board of education of the Garden City School District, to require defendants to provide the maximum possible days of student instruction for the 1974–75 school year. Writ denied. Plaintiff appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gerald F. Young,* Assistant Attorney General, for plaintiff.

*Miller, Canfield, Paddock & Stone* (by *Thomas P. Hustoles* and *James E. Tobin),* for defendant

*Amici Curiae:* Michigan Education Association and Garden City Education Association, by *Levin, Levin, Garvett & Dill* (by *Harvey I. Wax).*

Before: T. M. BURNS, P. J., and M. F. CAVANAGH and O'HARA,* JJ.

O'HARA, J. This is a case in which complete and literal compliance with a state statute is impossible because of the time at which the State Board of Education began its legal action.

Thus indisputably the question becomes how much compliance by the Garden City School District is legally sufficient compliance?

The panel noted this anomaly and persistent bench questioning finally resulted in the conclusion that the state board ordered the district board to jump across a creek. The district board replied

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

in effect we can't jump the creek, it's too wide. The state board's reply was to jump as far as you can. The district board said it had done just that. The state board said it hadn't. A circuit judge agreed with the district board. We agree with the circuit judge. This is how it came about.

There was a teacher strike in the Garden City School District. It was bitter and disruptive, with a sprinkling of violence. An injunction was issued against the teachers. A finding was made that it was violated. Contempt citations were issued. Sentences were imposed.

Finally, in the manner provided by the controlling statutes, after interminable and bitter bargaining sessions between the teachers and the district board, a labor contract was agreed upon. A result reached by bargaining was that there would be 158 instructional days in the present school year.

A complaint for mandamus and a motion to show cause was then filed by plaintiff State Board of Education. The complaint requested that defendants be required to provide the maximum possible days of student instruction for the 1974-1975 school year. After oral argument by counsel for the parties, the trial court issued its opinion from the bench denying the relief sought by plaintiff. The plaintiff then filed its claim of appeal with this Court.

On appeal, the appellant's contentions may be concisely stated as follows: Section 575 of the School Code of 1955[1] and Sections 13(2)[2] and 101(2)[3]

---

[1] MCLA 340.575; MSA 15.3575 provides:

"The board of every district shall determine the length of the school term. The minimum number of days of student instruction shall be not less than 180. Any district failing to hold 180 days of student instruction shall forfeit 1/180th of its total state aid appropriation for each day of such failure. Not later than August 1, the board

of the Gilbert E. Bursley School District Equaliza-
tion Act of 1973 impose a clear legal duty upon

of every district shall certify to the department of education the
number of days of student instruction in the previous school year. If
the district did not hold at least 180 days of student instruction, the
deduction of state aid shall be made in the following fiscal year from
the first payment of state aid. Days lost because of strikes or teachers
conferences shall not be counted as a day of student instruction. The
state board of education shall establish rules for the implementation
of this section."

2 MCLA 388.1113(2); MSA 15.1919(513)(2) states:

"For the 1974–75 school year only, the membership and the number
of teachers and other professionals approved by the superintendent of
public instruction may be counted as of the fourth Friday following
Labor Day, the fourth Friday following the start of classes, or the
second Friday in November, whichever date the district chooses. A
school district in session and counting its membership and teachers
under this subsection shall receive state aid based on its 1973 mem-
bership and teacher count until the membership count under this
subsection is taken and has been certified by the department. A
school district shall not count Saturday sessions or the sessions held
on traditional school holidays to meet the 180-day requirement but
may extend sessions to no later than the second Friday of July for
this purpose. The fiscal year 1974–75 for a school district shall be
extended for the purpose of providing the minimum of 180 days of
student instruction."

3 MCLA 388.1201(2); MSA 15.1919(601)(2) provides:

"Each district shall provide a minimum of 180 days of student
instruction. A district failing to hold 180 days of student instruction
shall forfeit 1/180 of its total state aid appropriation for each day of
such failure. A district failing to comply with rules promulgated by
the state board which establish the minimum time student instruc-
tion is to be provided to pupils for the regular school year shall forfeit
from its total state aid appropriation an amount determined by
applying a ratio of the time duration the district was in noncompli-
ance in relation to the minimum time student instruction is required.
A district failing to meet both the minimum 180 days of student
instruction requirement and the prescribed time of student instruc-
tion requirement shall be penalized only the higher of the 2 amounts
calculated under the above forfeiture provisions. Not later than
August 1, the board shall certify to the department the number of
days of student instruction in the previous school year. If the district
did not hold at least 180 days of student instruction, the deduction of
state aid shall be made in the current fiscal year. Days lost because of
strikes or teachers' conferences shall not be counted as a day of
student instruction. The state board shall promulgate rules for the
implementation of this section. For the 1974–75 school year only, a
school district taking its membership count under section 13(2) and
not having 70% of its membership in attendance on any day shall
receive state aid in that proportion of 1/180 that the actual percent of
attendance bears to 70%."

school districts to provide a minimum of 180 days of student instruction excluding days lost because of strike. A reading of the pertinent statutes discloses that defendants are without discretionary authority in establishing the number of days of student instruction. In addition, the phrase "traditional school holidays" simply means that defendants are not required to provide student instruction on public holidays. Therefore, error was committed by the trial court in failing to grant the writ of mandamus since the current controlling statutes compel the conclusion that defendants are required to provide the maximum possible days of student instruction for the 1974–1975 school year.

Per contra, the appellees argue that there was no clear abuse of discretion by the trial court in denying mandamus. Neither Section 575 of the School Code of 1955 nor Sections 13(2) and 101(2) of the Gilbert E. Bursley School District Equalization Act of 1973 impose an uncontrovertibly clear legal duty to provide 180 days of student instruction. In light of the fact that it is impossible to provide 180 days of student instruction, defendants were given statutory discretion under Section 575 to determine the length of the school term, and, as such, their determination does not constitute a ministerial act. Finally, there was no abuse of discretion in denying mandamus since the trial court's decision was firmly grounded upon several sound considerations, including the equities of the situation.

Both parties concede that as of the time mandamus was sought by the plaintiff that there was no way under the sun to get in the statutorily mandated 180 days of student instruction within the time limit for the school year. 176 days was the maximum number that could be afforded the stu-

dents and the statutes satisfied. Of these, 6 potential days of student instruction have since been lost for various reasons. As aforesaid, the district board and the teachers had agreed on 158 days of instruction.

158 from 170 is 12 instructional days. Already kids have gone to school and teachers taught on Christmas Eve, and other days normally included in vacation days.

Had 180 instructional days been possible there is no doubt a clear legal duty would have rested upon the district board to comply with the statute as directed by the state board.[4] It seems to us further that this Court would have been obligated to require it.

Judicial fiat cannot accomplish the impossible.

We think the district board jumped as far as it could under the circumstances.

The important thing to remember about this opinion is that we specifically declare it precedent for nothing. It is a practical solution to an insoluable legal problem. By it we do not dilute in any measure the supervisory power of the State Board of Education over district school boards. We

[4] Courts in Michigan will not interfere with the trial court's refusal to issue a writ of mandamus unless it is evident that such a refusal constitutes a clear abuse of discretion. *See Iron County Board of Supervisors v Crystal Falls,* 23 Mich App 319; 178 NW2d 527 (1970), and *Nicholas v Watertown Township,* 43 Mich App 510; 204 NW2d 365 (1972). It is well settled that mandamus is a *discretionary* writ and will issue against public officials only to compel the enforcement of a clear legal duty. *See Schwartz v Secretary of State,* 393 Mich 42; 222 NW2d 517 (1974), *Sears v Department of Treasury,* 57 Mich App 218; 226 NW2d 63 (1974).

For mandamus to issue (1) the plaintiffs must have a clear legal right to performance of the specific duty sought to be compelled and (2) the defendants must have a clear legal duty to perform such act, which must be a *ministerial act* which is prescribed and defined by law with such precision and certainty as to leave nothing to the exercise of discretion or judgment. *See Thorne v Nicholson,* 32 Mich App 223; 188 NW2d 159 (1971), *Toan v McGinn,* 271 Mich 28; 260 NW 108 (1935), *Iron County Board of Supervisors v Crystal Falls, supra.*

merely acknowledge our inability to turn back the clock. We add that any attempt by a district board or a teacher association to take advantage of this holding by seeking deliberately to come within its terms will receive a very chilly judicial reception in this Court. We also suggest that should a similar situation arise in the future the state board might well consider acting more promptly so that the district board can make its limitations known earlier.

For the reasons and within the limitations set forth we affirm the trial judge. No costs.