BLAKELY DRAIN IMPROVEMENTS DRAINAGE DISTRICT v CITY
OF WOODHAVEN

BROWNSTOWN CREEK DRAIN IMPROVEMENTS DRAINAGE
DISTRICT v CITY OF WOODHAVEN

Docket Nos. 52605 to 52608, 52673. Submitted November 9, 1981, at
Detroit.—Decided January 8, 1982. Leave to appeal applied for.

Blakely Drain Improvements Drainage District brought an action
against the cities of Woodhaven, Gibraltar, Romulus, and
Southgate and the townships of Brownstown and Huron, seek-
ing writs of mandamus to compel the defendants to levy taxes
and pay certain assessments for engineering fees and adminis-
trative costs incurred in a drain improvement project. Browns-
town Creek Drain Improvements Drainage District brought an
action against the cities of Woodhaven and Gibraltar and the
townships of Brownstown and Huron, seeking the same remedy
relative to fees and costs incurred in a similar project. The
actions were consolidated for trial. Defendants moved for accel-
erated or summary judgment, which motions were denied.
Thereafter, writs of mandamus were issued ordering the defen-
dants to levy taxes and pay the assessments, Wayne Circuit
Court, Charles Kaufman, J. The defendants appeal. The ap-
peals were consolidated. *Held:*

1. The defendants did not object to the final apportionment of
assessments, nor did they seek review thereof within the statu-
tory period of limitation. In addition, the defendants did not
properly plead fraud nor demonstrate lack of jurisdiction on

REFERENCES FOR POINTS IN HEADNOTES
[1] 25 Am Jur 2d, Drains and Drainage Districts § 52.
[2] 37 Am Jur 2d, Fraud and Deceit § 424.
Construction and application of provision of Rule 9[b].
Federal Rules of Civil Procedure, that circumstances constituting
fraud or mistake be stated with particularity. 27 ALR Fed 407.
[3, 5] 25 Am Jur 2d, Drains and Drainage Districts §§ 6, 30, 55.
[4, 5] 52 Am Jur 2d, Mandamus §§ 31, 32.
[6, 7] 25 Am Jur 2d, Drains and Drainage Districts § 30.
[7] 51 Am Jur 2d, Limitation of Actions § 34.
[8] 25 Am Jur 2d, Drains and Drainage Districts §§ 19, 21, 38, 40.

the part of the drainage districts. Thus the trial court properly denied the defendants' motions for accelerated judgment.

2. The trial court properly held that the plaintiffs were the proper parties to bring the actions.

3. The defendants had a clear legal duty to pay the assessments, the fact that the drainage projects were abandoned notwithstanding. The record reveals that the projects were properly abandoned and that notices of abandonment to the defendants were consistent with the requirements of the Drain Code. The trial court properly issued writs of mandamus.

4. The record reveals that the notices of tax assessment were not defective. The costs at issue were final and the interest rates were within legal limits. The districts' failure to notify the defendants at least 30 days prior to the due date of the first installment payments does not excuse the defendants from making the required payments.

Affirmed.

1. DRAINS — ASSESSMENTS — LIMITATION OF ACTIONS — FRAUD.

A final order of apportionment of assessments for establishing a drain is not subject to challenge in any court except by proceedings in certiorari within the statutory period for limitation of such actions; otherwise, the assessments are subject to court challenge only where fraud is alleged and properly pled or where lack of jurisdiction is alleged (MCL 280.483; MSA 11.1483, GCR 1963, 112.2).

2. FRAUD — PLEADING.

Fraud must be pled with specificity; mere allegations or conclusions are insufficient to apprise a defendant of the nature of the claim of fraud; an essential element of the tort of fraud is reliance upon fraudulent representations or conduct which amounts to fraud at law, thus an aggrieved party must allege a causal link between the defendant's inequitable conduct and the resulting harm (GCR 1963, 112.2).

3. DRAINS — DRAINAGE DISTRICTS — STANDING — CORPORATE EXISTENCE.

A drainage district is a corporate body and has the power to institute legal action against communities to compel levy of apportioned assessments; where a drainage project is abandoned, the drainage district continues to exist as a corporate entity until all debts are paid (MCL 280.5, 280.478; MSA 11.1005, 11.1478).

4. MANDAMUS — GROUNDS FOR MANDAMUS.

A writ of mandamus is not issued as a matter of right but in the discretion of the issuing court and is governed by equitable principles; mandamus lies only where there is a clear legal duty incumbent on a defendant and a clear legal right in a plaintiff to the discharge of the duty and the specific act sought to be compelled is of a ministerial nature, prescribed and defined by law with such precision and certainty as to leave nothing to the exercise of discretion or judgment.

5. DRAINS — MUNICIPAL CORPORATIONS — DRAINAGE DISTRICTS — ASSESSMENTS — MANDAMUS.

A municipal corporation has a clear legal duty to pay assessments for county drains necessary for the public health including fees and costs occasioned by a feasibility study, notwithstanding the fact that the project is later properly abandoned, and, upon the corporation's failure to pay such assessments, the drainage district having jurisdiction may seek and be granted writs of mandamus to compel levy of assessment (MCL 280.462, 280.468, 280.480; MSA 11.1462, 11.1468, 11.1480).

6. DRAINS — DRAINAGE DISTRICTS — ABANDONMENT OF DRAINAGE PROJECTS.

A drainage district properly may abandon a drainage project where no contract to undertake the project is let within five years after the petition for the project is filed, the petition thereafter is deemed abandoned by the drain commissioner, and proper notice of the order of abandonment is made (MCL 280.221; MSA 11.1221).

7. DRAINS — ABANDONMENT OF DRAINAGE PROJECTS.

The five-year period following the filing of a petition for a drainage project during which no contract for the construction of the project is let and which is necessary before such project may be abandoned may not include a period of time during which any litigation contesting the validity of the project is pending (MCL 280.221; MSA 11.1221).

8. DRAINS — DRAINAGE DISTRICTS — ASSESSMENTS — NOTICE.

Notice by a drainage district of apportionment of assessments based on costs incurred for a feasibility study of a drainage project later properly abandoned constitutes notice of the final apportionment of assessments to a municipal corporation sufficient to impose liability for payment upon the corporation, notwithstanding failure by the district to give the notice at

least 30 days in advance of the due date of the payment (MCL 280.474; MSA 11.1474).

*Jeffrey A. Supowit,* for plaintiffs.

*Daniel J. Andrews,* for defendant City of Woodhaven.

*Kurt E. Riedel,* for defendant City of Gibraltar.

*Charles J. Lowther,* for defendant City of Romulus.

*James A. Kandrevas,* for defendant City of Southgate.

*William J. DeBiasi, P.C.,* for defendant Township of Brownstown.

*Richard G. James,* for defendant Township of Huron.

Before: R. M. MAHER, P.J., and D. F. WALSH and D. C. RILEY, JJ.

D. C. RILEY, J. Defendants appeal as of right from writs of mandamus issued by the trial court ordering defendants to levy assessments for engineering fees and administrative costs incurred as a result of two drainage projects. Although the drainage districts were separate and involved separate drainage areas, our statement of facts to follow applies to both drains.

The Blakely Drain and the Brownstown Creek Drain are major drains which cross the several communities involved in this litigation. In 1967, Brownstown Township and the City of Woodhaven petitioned the Wayne County Drain Commissioner for improvements in the two drains which in-

volved widening and relocation, pursuant to the provisions of Chapter 20 of the Drain Code of 1956, MCL 280.1 *et seq.;* MSA 11.1001 *et seq.* Although these were separate drainage areas and, thus, treated as separate drainage districts, it was anticipated that both drains would be constructed at the same time.

The Blakely Drain Improvements Drainage District was established in March, 1967, with the cities of Trenton, Woodhaven, Gibraltar, Riverview, Romulus, Southgate, and Taylor and the townships of Brownstown and Huron participating. Some units of government paid the first installment due under each district assessment roll in 1979 and are not involved in this appeal.

The Brownstown Creek Drain Improvements Drainage District was established in April, 1967, with the cities of Woodhaven and Gibraltar and the townships of Brownstown and Huron participating.

Early in 1968, the two drainage boards contracted with Angelo J. Marino, a civil engineer, for the preparation of plans and specifications for the improvements to each drain. Thereafter, in 1969 and 1970, hearings were conducted for the purpose of apportioning the costs of the projects among the various communities. These hearings adjourned with several communities voicing objections to the apportionment of costs proposed. In 1971, Environmental Engineers, subcontractors to Marino, filed a notice of lien on each district, alleging Marino's failure to pay for services rendered, and terminated their services as of December, 1970.

In the succeeding 2-1/2 years, the engineers engaged in negotiations with the boards to settle the matter. In July, 1973, each district hired Consulting Engineers Associates, Inc., who provided a

status report in December, 1974, which reported that plans for the Brownstown and Blakely drains were available to both districts in June of 1969 and that Marino had substantially completed his work. The consulting engineers concluded that any delay in beginning construction was not attributable to Marino but rather to the substantial cost of the project and other difficulties which had been encountered.

Soon thereafter, in mid-1975, each district contracted with another engineering firm, Canton Engineering Associates, Inc., to complete each project. The record indicates further that in November, 1976, the drainage boards and Marino reached agreement as to the value of the services rendered under the contract: $528,623.01 for the Blakely Drain and $245,818.50 for the Brownstown Creek Drain.

In March, 1978, Marino brought two suits, one against the drain commissioner and the drainage districts to enforce the agreement for payment of fees and costs, and a second suit to require that a final order be adopted and a special assessment roll be prepared and levied.

In the fall of 1978, while the Marino suits were pending, final apportionment orders were entered after hearing and notice in the two drainage districts. In December, 1978, each district adopted a special assessment roll assessing the total costs of each project against defendants, including the monies owed Marino. The defendant communities were assessed $310,000 for engineering fees and administrative costs for the Brownstown Creek Drain and $697,451 for the Blakely Drain. The assessments were payable in five annual installments, commencing April 1, 1979.

In January, 1979, the trial court entered an injunction in each of the Marino suits which substantially set forth the arrangements made at the hearing in December, 1978, and ordered the projects closed out after payment of fees, costs, and assessments levied in accordance with the final apportionment orders.

In March, 1979, each of the participating communities were notified of the due date for the first (of five) annual installments, *i.e.,* April 1, 1979. In October, 1979, those communities which failed to make the first annual payments were ordered to show cause in the Marino suits. In January, 1980, the plaintiffs started these suits to compel defendants to levy the taxes and pay the assessments.

On March 7, 1980, after hearing arguments on defendants' motions for accelerated and/or summary judgment, the trial court held that the districts each had the capacity to sue by virtue of the statute, even though the project was abandoned, that the defendants failed to make a timely objection as provided for in the statute, and, finally, that they failed to object to the apportionment orders by utilizing certiorari proceedings.

Three weeks later, the trial court held a hearing on the plaintiffs' complaints for writs of mandamus to require levying the assessment. The court concluded that, under the statute, defendants were obligated to pay for the expenses of the project and that they were obligated to pay for the engineering and other expenses incurred by the districts.

Before us, therefore, are defendants' consolidated appeals from the trial court's denial of their motions for accelerated judgment and their appeals from the court's grant of plaintiffs' motions for writs of mandamus.

I

We first must decide whether the defendant communities were barred from contesting the apportionments or levy of assessments by the statute of limitations set forth in the Drain Code of 1956.

MCL 280.469; MSA 11.1469 states:

"After the tentative apportionments of cost have been made, the drainage board shall set a time, date, and place it will meet and hear objections to the apportionments. Notice of the hearing shall be published twice in the county by inserting the notice in at least 1 newspaper published in the county, designated by the drainage board, the first publication to be not less than 20 days before the time of the hearing. The notice shall also be sent by registered mail to the clerk or secretary of each public corporation proposed to be assessed, except that a notice to the state shall be sent to the state highway director and a notice to the county shall be sent both to the county clerk and the county road commission. The mailing shall be made not less than 20 days before the time of hearing. The notice shall be signed by the chairperson and proof of the publication and mailing of the notice shall be filed in his or her office. The drainage board may provide a form to be substantially followed in the giving of the notice. The notice shall include tentative apportionments to the several public corporations. After the hearing, the drainage board may confirm the apportionments as tentatively made, or if it considers the apportionments to be inequitable, it shall readjust the apportionments. If the readjustment involves the increasing of an assessment and an increase shall not be consented to by resolution of the governing body of the public corporation whose assessment was increased, before any readjusted apportionments are confirmed the drainage board shall set a time, date, and place for a rehearing and shall give notice of the hearing as in the first instance. The notice shall also set forth the apportionments as readjusted. After confirmation, the drainage board shall issue its

order setting forth the several apportionments as confirmed. The order shall be known as the final order of apportionment."

The tentative apportionments were set by the drainage boards on June 14, 1978, for both districts. The minutes from the Brownstown Creek Drainage Board meeting on August 23, 1978, and the Blakely Drainage Board meeting on September 6, 1978, indicate that an affidavit of publication and notices of hearing were presented, thereon, for publication in various newspapers. Further proofs of service of notice by registered mail were presented, evidencing a mailing to all parties in interest.

Therefore, it is concluded that, pursuant to the statute, defendants received notice of the tentative apportionments. At the meetings of August 23, 1978, and September 6, 1978, there were no objections to the final apportionments.

MCL 280.483; MSA 11.1483 states:

"Neither the final order of determination nor the final order of apportionment shall be subject to attack in any court, except by proceedings in certiorari brought within 20 days after the filing of such order in the office of the chairman of the board issuing the same. If no such proceeding shall be brought within the time above prescribed, the drain shall be deemed to have been legally established and the legality of the drain and the assessments therefor shall not thereafter be questioned in any suit at law or in equity, either on jurisdictional or nonjurisdictional grounds."

Defendants did not seek a review in the circuit court within the 20-day prescribed period of limitations. Unless equity will allow, defendants' objections are barred by the statute of limitations. Defendants claim, however, that the statute of

limitations should not apply because there was fraudulent conduct on the part of the drainage boards.

In *Emerick v Saginaw Twp,* 104 Mich App 243, 247; 304 NW2d 536 (1981), this Court stated:

"An exception to the plain language of the Drain Code has grown up in Michigan under prior statutory language for cases where fraud is alleged and properly pled. An entire lack of jurisdiction could be challenged in a similar fashion. However, mere irregularities in the proceedings were to be settled under the statute. See *Kinner v Spencer,* 257 Mich 142; 241 NW 240 (1932), *Patrick v Shiawassee County Drain Comm'r,* 342 Mich 257; 69 NW2d 727 (1955).

\* \* \*

"Under the court rules of Michigan, fraud must be pled with specificity. GCR 1963, 112.2. Mere allegations or conclusions are not sufficient to apprise a defendant of the nature of the claim of fraud.

\* \* \*

"In addition, an essential element of the tort of fraud is reliance upon fraudulent representations or conduct which amounts to fraud at law. The aggrieved party must allege a causal link between the inequitable conduct of a defendant and the resulting harm."

Our reading of the record below persuades us that the trial court was correct in denying the motions for accelerated judgment. The statute is clear. It sets forth a specified length of time for objections to be filed. The record indicates that this time elapsed and no objections were made. The defendants' allegations are insufficient to comply with GCR 1963, 112.2.

The defendants allege, in an attempt to demonstrate fraud, that they did not appeal because they did not believe that the apportionments were final. However, they did not allege that the apportion-

ments were incorrect. Rather, they argue that since the project was abandoned they should not pay *anything* since they did not receive the benefits they were seeking. This can not be construed as fraud.

The defendants argue that the assessments were unreasonable. We do not agree. Defendants petitioned for the project. The drainage boards were formed in response to those petitions to determine the feasibility of the project. The hiring of an engineer and the administrative expenses involved therewith were all necessary parts of the feasibility study. Further, just as the amount of the assessments are properly within the drainage boards' discretion, so is the discretion of whether to abandon the project. While this Court has found no cases that have addressed the issue of whether a community is liable for the costs incurred in determining the feasibility of a drainage project when the project is abandoned, we conclude, as did the trial court, that the statute does impose a duty upon the cities and townships to pay certain engineering fees and administrative costs where a drainage project has been abandoned.

The Drain Code sets forth the remedy to contest the drainage boards' decision. This remedy was not followed by the defendants, nor did they properly plead fraud on the part of the drainage boards. Hence, they are barred by the statute of limitations from challenging the apportionments or levy of assessments.

## II

The defendants also claim that it was error not to dismiss the plaintiffs' complaints for writs because the drainage districts were not the proper

parties to bring the suit. Again, we affirm the trial court's decision.

The drainage district has the power to institute legal action pursuant to MCL 280.5; MSA 11.1005. We read the statute to say that the county treasurer is obliged to advance the amount of the assessment "if bonds or other evidence of indebtedness have issued to finance the project". Here, neither the county treasurer nor the county was involved in the projects, and there is no provision in the Drain Code prohibiting the drainage districts from instituting legal proceedings against the communities to compel levy of the assessments. Hence, pursuant to the drainage districts' powers to sue, they were the proper parties to bring suit. Further, even though the projects were abandoned, the drainage districts continue as corporate entities until their debts are paid. MCL 280.478; MSA 11.1478.

## III

Defendants also argue that the court erred by granting the writs of mandamus compelling the defendants to levy the assessments.

In *Beadling v Governor of Michigan,* 106 Mich App 530, 533; 308 NW2d 269 (1981), this Court stated:

"The issuance of a writ of mandamus is not a matter of right but is discretionary and is governed by equitable principles. *Board of Education of Oakland Schools v Superintendent of Public Instruction,* 401 Mich 37, 43-44; 257 NW2d 73 (1977).

" 'Mandamus lies only when there is a clear legal duty incumbent on the defendant and a clear legal right in the plaintiff to the discharge of such duty.

*Miller v Detroit,* 250 Mich 633; 230 NW 936 (1930). The specific act sought to be compelled must be of a ministerial nature, that is, prescribed and defined by law with such precision and certainty as to leave nothing to the exercise of discretion or judgment. *Taylor v Ottawa Circuit Judge,* 343 Mich 440; 72 NW2d 146 (1955), *Bills v Grand Blanc Twp,* 59 Mich App 619; 229 NW2d 871 (1975), *State Board of Education v Garden City School Dist,* 62 Mich App 376; 233 NW2d 547 (1975).' *Board of County Road Comm'rs of Oakland County v State Highway Comm,* 79 Mich App 505, 509; 261 NW2d 329 (1977)."

This Court will not interfere with the grant or denial of mandamus absent a clear abuse of discretion. *Cyrus v Calhoun County Sheriff,* 85 Mich App 397, 399; 271 NW2d 249 (1978). *Iron County Board of Supervisors v City of Crystal Falls,* 23 Mich App 319; 178 NW2d 527 (1970).

Defendants maintain that they have no clear legal duty to pay the assessments and that, therefore, the writs of mandamus were inappropriate. MCL 280.462; MSA 11.1462, states:

"County drains which are necessary for the public health may be located, established and constructed under the provisions of this chapter *where the cost thereof is to be assessed wholly against public corporations."* (Emphasis added.)

The above-emphasized statement indicates that the defendants are liable for the costs related to a county drain. Even though a drain was not constructed or repaired in this case, the Drain Code states that a drainage board shall employ an engineer and that engineering fees and administrative costs are to be assessed against the community.

MCL 280.468; MSA 11.1468 states in part:

"The drainage board shall secure from a competent engineer, plans, specifications, and an estimate of cost of the proposed drain, which, when approved and adopted by the board, shall be filed with the chairman thereof."

MCL 280.480; MSA 11.1480 likewise states:

"The cost of any drain project shall include * * * (2) the administrative and other expenses of the drainage board including the cost of service and publication of all notices; (3) all engineering, legal and other professional fees; (4) interest on bonds for the first year, if bonds are to be issued, and interest on moneys advanced pursuant to section 479; and (5) an amount not exceeding 10% of the gross sum to cover contingent expenses."

We conclude that the defendants had a clear legal duty to pay the assessments. The fact that the projects were abandoned is not relevant to their duty to pay the fees and costs occasioned by the feasibility study.

Defendants challenge the writs by maintaining that the drainage districts did not have the authority to abandon the project. This challenge is without merit. MCL 280.221; MSA 11.1221, states in part:

"If no contract shall be let within 5 years after the date of filing the petition to locate, establish and construct, or deepen, widen, straighten, tile, extend or clean out a drain, the drain commissioner may determine that the petition shall be deemed abandoned and no further action shall be taken to construct the drain. Time during which any litigation shall be pending to contest the validity of such proceedings shall not be counted as a part of such 5-year period. If the drain commissioner determines the petition shall be abandoned, he shall issue his order to that effect; provided, that such determination of abandonment shall not be

issued within the 5-year period. Notice of the order shall be given by publishing a notice in a newspaper of general circulation in the county. The provisions of this section shall apply to all petitions which are in full force and effect on the date of January 1, 1973, or thereafter."

Defendants misconstrue the statute when they argue that the five-year rule prescribed by the statute was violated because the drainage boards were in litigation from 1970-1979 and had contracted with new engineers in February, 1978.

The lawsuits brought by the engineer were not to contest the validity of the proceedings but rather to collect fees for his services. Hence, abandonment was proper.

In addition, defendants maintain that the abandonment was improper because the drainage boards contracted with new engineers within five years of the abandonment. However, the paragraph preceding the above-cited section states in part:

"At the time and place fixed in the notice therefor, the commissioner shall receive bids for the construction of the drain."

Section 221 refers to contracts for the construction of the drain, not contracts with engineers. Therefore, the statement, "If no contract shall be let within 5 years", should be interpreted as referring to a construction contract. If, after five years from the filing of the petition to locate, establish, construct, deepen, widen, straighten, tile, extend, or clean out a drain, no construction contract has been let, the drainage boards have the authority to abandon the projects. Therefore, since no contract for construction of the projects had been let, and

no litigation contesting the validity of the proceedings had been pending within five years preceding the drainage boards' determination of abandonment of the projects, the drainage boards properly could abandon the projects. Thus, defendants' allegations that the drainage boards did not have the authority to abandon the projects is meritless.

Further, defendants maintain that the writs of mandamus should have been denied because proper notice of abandonment of the projects was not given to the communities and they were not given an opportunity to be heard on the abandonment of the projects.

MCL 280.221; MSA 11.1221 states the procedure for notice in regards to abandonment. The trial court found that defendants had received some notice and that the drain commissioner had performed his duty. The trial court's finding was not an abuse of discretion. The defendants had a right to notice of the order of abandonment, but they did not have a right to have a hearing on the issue of abandonment. The writs of mandamus were properly issued.

## IV

Finally, this Court must determine whether the tax assessment notices sent to defendants were defective and violative of statutory intent so as to invalidate the 1979 assessments. Each of the defendant communities received notices in mid-March, 1979, of the assessments due on April 1, 1979.

Defendants raise three objections to the assessments. First, they contend that the assessments were not based on the actual or estimated cost of the projects. However, since the projects were

abandoned, the costs at issue were incurred in the feasibility study and represent the actual, as well as the final, cost of the projects. Therefore, the assessments were not defective, and defendants cannot withhold payment of assessments premised on a hope that the project will be reinstated.

The defendants' second argument, that the notices were defective because they did not have sufficient time to levy a tax, is also without merit.

From our reading of MCL 280.474; MSA 11.1474, it appears clear that the failure to notify defendants at least 30 days in advance does not excuse defendants from making their installment and interest payments.

Finally, defendants contend that they should be excused from paying the 1979 installment in that the notices improperly reflected an illegal rate of interest. Defendants argue that the assessment notices included a pre-due date interest figure which was as much as 30% of the original amount due.

We do not agree. The assessment rolls stated that six percent per annum rate applied. The pre-due date interest rate referred to is interest on the settlement owed to the engineer which accrued prior to the assessments due date.

MCL 280.474; MSA 11.1474 states in part:

"The chairman of the drainage board shall then certify to each public corporation assessed the amount of the total assessment against it, the amount of the various installments if the assessment is divided into installments, the due date of each installment, *and the rate of interest upon installments from time to time*

*unpaid.* The chairman each year, at least 30 days before the time of the levying of taxes by each public corporation, *shall notify it of the amount of the installment and interest next becoming due,* but the failure to notify a public corporation shall not excuse it from making payment of the installment and interest." (Emphasis added.)

The trial judge's injunctive order of January 16, 1979, ordering the drainage boards to pay the engineer pursuant to the consent judgment between the parties, stated:

"3. That judgment be entered against Blakely Drain Improvements Drainage District, a body corporate, in favor of the plaintiff, Angelo J. Marino, in the amount of $528,623.01, plus interest at the rate of 6% per annum, from November 10, 1975, to December 20, 1978, and

"4. That Charles N. Youngblood, Chairman of the Blakely Drain Improvements Drainage Board, having prepared a special assessment roll, assessing the total cost of said project, in the amount of $697,451 on December 20, 1978, not including interest of 6% due on said special assessment roll, and specifically including the amount due the plaintiff, within said special assessment roll pursuant to MCL 280.473 and 280.474, provided said special assessment roll shall be due in not more than five annual installments, with the first installment to be due not later than April 1, 1979, and provided further than in accordance with §§ 473 and 475 of Act 40 of the Public Acts of Michigan of 1956 as amended MCL 280.473 and 280.475 that taxes levied by a public corporation for the payment of assessments shall not be deemed within any statutory or charter limitation."

Thus, the interest owing to the engineer was part of the costs to be assessed against the defendants.

Affirmed. No costs, a public issue being involved.