THAYER LUMBER CO. *v.* CITY OF MUSKEGON.

152    59
s157   426
s157   430

1. PUBLIC WORKS—SPECIAL ASSESSMENTS—MUSKEGON CHARTER—
BOARD OF REVIEW — JURISDICTION — ILLEGAL PROCEEDINGS —
REMEDY.

The board authorized by section 8, title 11, of the charter of
Muskegon (Act No. 344, Local Acts 1901), to review special
assessments, has no authority to adjudge illegal the proceed-
ings whereby the improvement was established, and a land-
owner appearing before the board and presenting such an
objection need not await a decision of the board before fil-
ing his bill to restrain further proceedings, but may abandon
that proceeding and institute a suit before a tribunal having
jurisdiction to determine the controversy.

2. SAME—RESTRAINING PROCEEDINGS—PREMATURITY OF SUIT.

A landowner objecting to the establishment of a public im-
provement, and the levying of special assessments therefor,
on the ground that the proceedings to establish the improve-
ment were irregular, need not wait until the municipal
authorities have made an actual levy of the tax before filing
his bill to restrain further proceedings, it being his duty to
act with diligence to avoid the loss of his right to resort to
equity consequent upon delay until the improvement shall
have been made.

3. SAME—LOCAL IMPROVEMENTS—ESTABLISHMENT—REGULARITY.

Where, upon the adjourned day of the hearing appointed for
receiving objections to a local improvement, the city coun-
cil adopted a resolution which, in substance and effect, de-
clared that the proceedings then pending were terminated
and that new and original action would be taken, the pro-
ceeding was at an end, and the council could not base future
proceedings, involving other and different lands, upon the
resolution and notice abandoned.

4. SAME—NOTICE—NECESSITY.

In the absence of statutory mandate, the council is not re-
quired to give any notice to property owners of its intention
to construct a public improvement and to levy a special as-
sessment to defray the expense thereof, but where notice is
required to be given it is imperative that such notice, when
brought to the attention of any person interested, shall ap-

prise him at least of the approximate location of the proposed improvement and of the property to be assessed therefor.

5. SAME—NOTICE—SUFFICIENCY.

Under the charter of Muskegon, section 4, title 11 (Act No. 344, Local Acts 1901), requiring the city council to give notice before ordering any public improvement any part of the expense of which is to be defrayed by special assessment, a notice of intention to construct a sewer, from a reading of which no person could ascertain in what part of the city the proposed sewer was to be built, or whether his property was liable to be assessed therefor, is insufficient to confer jurisdiction upon the council to order the improvement.

Appeal from Muskegon; Sessions, J. Submitted January 24, 1908. (Docket No. 159.) Decided March 31, 1908.

Bill by the Thayer Lumber Company against the city of Muskegon, the common council of said city, and the board of assessors of special sewer district No. 7, to set aside proceedings for the construction of certain sewers. From a decree for complainant, defendants appeal. Affirmed.

*Nims, Hoyt, Erwin & Vanderwerp,* for complainant.
*James E. Sullivan,* for defendants.

CARPENTER, J. The quoted part of this opinion—the principal part—is taken from the opinion of Judge Sessions, the trial judge, rendered in disposing of the case in the court below.

" On August 20, 1906, the council of the city of Muskegon duly adopted a resolution creating and constituting a special sewer district therein designated as ' Special Sewer District No. 7,' describing with particularity the lands constituting such district, including those of complainant, declaring the construction of sanitary sewers within such district to be a necessary public improvement, providing that 25 per cent. of the cost and expense of such improvement should be paid from the general sewer fund of the city of Muskegon and the remaining 75

per cent. by special assessment to be levied upon all the lands within the district according to benefits, adopting the plans and diagrams prepared by the civil engineer and instructing the city recorder to give notice by publication in the official newspaper that the council would meet on September 10, 1906, to hear objections with respect to said sewers and to the levying of the special assessment therefor. Such notice was duly given by publishing the entire resolution in the official newspaper for the requisite time. Pursuant to such notice the council met on the 10th day of September and the hearing of objections was adjourned for one week and until September 17th. Upon that date a resolution was duly adopted ordering the sewer plans to be amended so as to provide sewer drainage for considerable additional territory and to change materially the boundaries and location of the sewer district as then constituted, and in instructing the civil engineer to prepare and file new or additional plans, specifications and estimates. The record of the council proceedings does not show any further adjournment of the hearing of objections to the proposed sewers.

"It appears by the journal record of its proceedings that on October 8, 1906, the council duly adopted a resolution declaring 'the construction of certain sanitary sewers (as shown on the revised plans of J. H. Blomshield, civil engineer) within the said district is a necessary public improvement,' providing that 25 per cent. of the cost and expense thereof should be paid from the general sewer fund of the city and the remaining 75 per cent. by special assessment to be levied upon the lands within the district according to benefits, adopting the revised plans and diagrams of the engineer, ordering the city recorder to give notice by publication in the official newspaper that the council would meet on the 5th day of November, 1906, 'to consider suggestions and objections with respect to said sewers and the levying of the special assessment therefor,' and concluding as follows:

" 'It is further resolved, That the resolution adopted by the council on the 20th day of August, constituting a special sewer district to be known and described as Special Sewer District No. 7, in so far as it conflicts with this resolution and with the plans and diagrams and the estimates and costs of said sewers mentioned herein, be rescinded and held for naught.' * * *

"Prior to the meeting of the council on November 5,

1906, the following notice was published in the official newspaper in the manner and during the time required by the city charter:

" ' TO WHOM IT MAY CONCERN.

" ' Take notice that:

" ' The council of the city of Muskegon, at a session of said council held at the council chamber in the city hall in the city of Muskegon, on the 8th day of October, 1906, adopted a resolution that certain lands mentioned therein should constitute a sewer district, to be known and described as special sewer district number seven.

" ' And also, that the construction of certain sanitary sewers therein was a necessary public improvement and that a special assessment should be levied therefor;

" ' And also, adopted the revised plans and diagrams prepared under the direction of the council by J. H. Blomshield, civil engineer, which plans and diagrams show a plat of the whole sewer district, with all the streets, public grounds, lots and subdivisions thereof in the district and the proposed route and location of the sewers and branches to be constructed and the depth, grade and dimensions with estimates of the cost thereof, which plat, diagrams and estimates, with the resolution referred to, are now on file in my office where they may be found for examination.

" ' You will also take notice, That in accordance with said resolution, the council will meet at the council room in the city of Muskegon on the 5th day of November, 1906, at eight o'clock in the afternoon, to consider suggestions and objections with respect to said sewers and to the levying of a special assessment therefor.

" ' Dated, this 10th day of October, 1906.

" ' P. P. MISNER,

" ' Recorder of the City of Muskegon.'

" No other notice of this meeting to hear objections was published or given, and the complainant had no other notice or knowledge of the proceedings and action contemplated.

" The subsequent proceedings of the council, ordering the construction of the sewers, advertising for bids, letting the contract, amending the plans and specifications, appointing the board of assessors, describing the lands to be assessed and directing the special assessment to be made, are all based upon the resolution of October 8, 1906, and nowhere in these proceedings is any reference made to the resolution of August 20, 1906.

" A special assessment roll was prepared by the board of assessors, appointed by the council for that purpose,

and upon such assessment roll the board of assessors assessed against the property of the complainant the sum of $1,148.16.    After this assessment roll had been reported by the board of assessors to the council for confirmation and at the time appointed for the meeting of the council and board of assessors as a joint board of review, complainant filed a protest against the assessment upon its property, and in such protest set forth substantially the same grounds of objection as are alleged in its bill of complaint in this cause.    The meeting of the board of review was adjourned to a later date.    The city attorney filed a written opinion with the council, holding that complainant's objections were not well taken.    Thereupon and before any action upon its protest had been taken by the board of review, complainant commenced this suit in which it seeks a decree of this court setting aside the proceedings heretofore had and taken and restraining all future proceedings by the defendants to levy such special assessment upon and against its property.

"The claims of the respective parties may be stated as follows:

"Complainant contends that all of the proceedings on the part of the defendants with reference to the construction of the improvement in question and the levying of a special assessment therefor are of no validity—

"1. Because the proceedings inaugurated by the adoption of the resolution of August 20, 1906, were terminated and came to an end on September 17, 1906, and the subsequent actions of the municipal authorities were not and could not be based thereon.    *    *    *

"3. Because the published notice of the meeting of the council on November 5, 1906, to hear and consider objections to the proposed improvement was not sufficient to confer upon the council jurisdiction and authority to take further proceedings with reference to such improvement and assessment.   *  *  *

"Besides denying and attempting to refute each and all of these claims of the complainant the defendants contend that the complainant cannot prevail,  *  *  *  because, in any event, this suit has been instituted prematurely."

1. Was this suit commenced prematurely?

"The argument in support of this contention is in substance that having appeared before the board of review and there presented objections to the improvement and its

resulting assessment, complainant must await the decision of that tribunal before invoking the aid of another."

There would be much force in this argument if such board of review had any rightful authority to grant complainant relief. It derives its authority from section 8, title XI, of the charter of the city of Muskegon, the same being Act No. 344 of the Local Acts of 1901. That section reads:

"At the time so appointed, the council and board of assessors shall meet, and then or at some adjourned meeting review the assessment roll and consider any objections made thereto; the council shall correct the same, if necessary, and confirm it as reported or as corrected; or it may refer it back to the board of assessors for revision or annul it, and direct a new assessment, in which case the same proceedings shall be had, as in respect to the previous assessment."

The authority given to the board of review by this section is to correct errors in the assessment. It does not give that board authority to adjudge illegal the proceedings whereby the sewer was established. Complainant does not seek relief from errors committed during the assessment. It seeks relief upon the ground that the proceedings to establish the sewer were illegal. When complainant applied to the board of review for relief, it therefore applied to a tribunal which had no jurisdiction to grant relief—and this was the opinion of the city attorney who represented defendant then and now—and there is no just ground for claiming that complainant should continue to prosecute its case before such a tribunal. It had therefore a right—indeed, it was its duty—to abandon that proceeding and to institute a suit before a tribunal having jurisdiction to determine the controversy.

Defendants also contend that complainant should have delayed until defendants had taken other steps, viz., made an actual levy of the tax. We think otherwise. Complainant was bound to act with diligence. Had it delayed until the improvements had been made it might

have lost its right to resort to a court of equity for relief. *Byram* v. *City of Detroit*, 50 Mich. 56; *W. F. Stewart Co.* v. *City of Flint*, 147 Mich. 697, and authorities there cited.

2. Earlier proceedings.

"The resolution of the council, adopted August 20, 1906, the notice of hearing of objections based thereon, the meeting of the council to hear objections pursuant to such notice, and the adjournment of such hearing from September 10th to September 17th, were all regular and according to the requirements of the city charter. It is urged that the subsequent proceedings were merely supplemental to such former action, and, even though some of the later steps were irregular and defective, the jurisdiction once acquired by such improvement continued and has not been lost. The fatal weakness of this contention appears in the fact that on September 17th, when all parties interested were, in contemplation of law, before it, the council, instead of further adjourning or continuing the proceedings then begun and in progress, adopted a resolution, which, in substance and effect, declared that the proceedings then pending were terminated and that new and original action would be taken. Every person present at or having knowledge of the adoption of that resolution must have understood that new and different plans and diagrams were to be prepared, that a new and different sewer district was to be created and that, when the proper legal steps had been taken to accomplish this, a time would be fixed and notice thereof duly given when all persons interested could have their day in court and have an opportunity to be heard if they so desired. * * * *Beach* v. *Mayor, etc., of Jersey City*, 71 N. J. Law, 87; *Angus* v. *City of Hartford*, 74 Conn. 27.

"The record of the proceedings of the council with reference to this improvement, when considered in its entirety, conclusively establishes the fact that the council did not intend to and did not base its action of October 8, 1906, and subsequent dates, upon anything which had occurred and been done prior to September 17th of that year. The resolution of March 17, 1907, ordering the making of the assessment in question and appointing a board of assessors for that purpose, recites that it is based upon the resolution of October 8, 1906. Besides, the lands de-

scribed therein as constituting the special assessment district and to be assessed are materially different from those described in the resolution of August 20, 1906. A careful study and examination of these two resolutions shows that upwards of 250 lots or parcels of land are included in the district created by the earlier resolution which are omitted from the district ordered to be assessed by the later one, while about 100 lots which are included in the later resolution are not contained in the former one. It thus appears from the resolutions themselves, and from the plats and diagrams filed therewith, that the length of the sewers and their cost were increased while the territory to be taxed therefor was decreased, and that the proportionate amounts of the assessment against the lands of the complainant and those of every other person in the district as finally fixed were correspondingly increased. This variance would of itself be fatal to the validity of the assessment if such assessment depended upon the earlier action of the council."

3. Notice.

" In the absence of statutory mandate, the council is not required to give any notice to property owners of its intention to construct a public improvement and to levy a special assessment to defray the expense thereof. *Parsons* v. *City of Grand Rapids*, 141 Mich. 467.

"But the charter of the city of Muskegon (section 4, title XI) provides:

" 'Before ordering any public improvement, any part of the expense of which is to be defrayed by special assessment,  *  *  * the council shall give notice thereof, and of the proposed improvement, and of the district to be assessed therefor by publication in the official newspaper of the city for at least two successive weeks, and of the time when the council will meet and consider any objections thereto.'

"The notice of the council meeting of November 5, 1906, to hear objections to this improvement, which is hereinbefore set out in full, does not comply with the charter requirements above quoted, and is fatally defective in that it fails to set forth either the proposed improvement or the district to be assessed therefor. Where notice is required to be given, it is imperative that such notice, when brought to the attention of any person interested, shall apprise him at least of the approximate location of

the proposed improvement and of the property to be assessed therefor. This notice contained no such information. From reading it no person could ascertain in what part of the city the proposed sewers were to be built, and much less whether or not his property was liable to be assessed therefor. As was said in *Auditor General* v. *Calkins*, 136 Mich. 1, 5:

" 'It was obligatory upon the common council to give the notice required as a condition precedent to further action. The notice is in the nature of a summons to bring a defendant into court. Its object is to summon the interested taxpayers before the council, and give them a hearing. The notice must give the time required by the law [the proposed improvement and the district to be assessed therefor], or else the council obtain no jurisdiction, any more than a court would obtain jurisdiction by a void service of process. The council in the inception obtained no jurisdiction on account of a void notice.' "

Defendants' counsel cite several Michigan cases which they contend are opposed to the foregoing reasoning. We may dismiss all those cases save one by saying that they are not only clearly but obviously distinguishable. The one case which deserves special attention is *Townsend* v. *City of Manistee*, 88 Mich. 408. There, proceeding under a charter containing a provision like that above quoted, the common council of Manistee published a notice which did not describe the district to be assessed, but which did "set out that it was the intention of the city to construct a lateral sewer, giving its direction, and the streets along which it would be laid." In a suit to set aside assessments instituted by the property owners after the sewer was constructed, the court overruled their objections to this notice. It will be observed that in that case, unlike the case at bar, the notice stated "the direction of the sewer and the streets along which it would be laid." It might well be said that this would challenge the attention of one owning property in the proximity of the sewer. Moreover, the complainants in that case having delayed the institution of their suit until the sewer was constructed could not obtain relief under the authority of *Byram* v. *City of Detroit*, 50 Mich. 56, and *W. F.*

*Stewart Co.* v. *City of Flint,* 147 Mich. 697. This case is not therefore ruled by *Townsend* v. *City of Manistee,* supra.

"In accordance with the views herein expressed a decree will be made in favor of the complainant and against the defendants, setting aside and holding for naught all of the proceedings heretofore taken and restraining any further proceedings to levy the special assessment in question upon and against the lands of complainant."

The decree is affirmed. The complainant will recover costs of both courts.

GRANT, C. J., and MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.