ELBA TOWNSHIP v GRATIOT COUNTY DRAIN COMMISSIONER

Docket No. 303211. Submitted October 11, 2011, at Lansing. Decided
    October 18, 2011, at 9:00 a.m. Leave to appeal granted, 491 Mich
    924.

Elba Township brought an action in the Gratiot Circuit Court
    against the Gratiot County Drain Commissioner seeking to enjoin
    the drain commission from consolidating the #181-0 Drain Drain-
    age District's established tributary drains. Elba Township argued
    that the consolidation had violated the Drain Code, MCL 280.1 *et
    seq.* because the #181-0 Drain petition for consolidation lacked the
    statutorily required number of freeholder signatures and the
    notice of the board of determination hearing had been deficient.
    David Osborn, Mark Crumbaugh, Cloyd Cordray, and Rita Cordray
    (the Osborn plaintiffs) intervened in the action, seeking declara-
    tory relief and claiming that the notice had violated the Drain
    Code and their due process rights. The drain commissioner moved
    for summary disposition, arguing that the appropriate number of
    signatures had been gathered and that the notice given appropri-
    ately informed those affected by the proposed drain consolidation
    of the date, time, and place of the board of determination meeting.
    Elba Township and the Osborn plaintiffs filed a cross-motion for
    summary disposition. The court, Randy L. Tahvonen, J., granted
    the drain commissioner's motion finding that under MCL 280.191
    only 5 freeholder signatures were required on the petition rather
    than the 50 signatures the township claimed were required under
    MCL 280.441. Elba Township and the intervening Osborn plain-
    tiffs appealed.

    The Court of Appeals *held*:

    1. A petition seeking to consolidate two or more drainage
districts must be signed by at least 50 property owners within the
proposed consolidated drainage district, MCL 280.441, but a
petition to clean out, relocate, widen, or straighten a drain need be
signed by only 5 freeholders whose land would be subject to
assessment for the improvements, MCL 280.191. Under MCL
280.194, property owners subject to a proposed assessment need
file only one petition for one proceeding when maintenance,
improvements, and consolidation of drainage districts are being
requested. Reading the three provisions together to avoid a

construction that would render any part of the statutes surplusage or nugatory, the more onerous signature requirement of MCL 280.441 indicated the Legislature's intent that it should be harder to initiate a consolidation proceeding than one for maintenance because of the potential for consolidation to affect a much larger segment of the population than maintenance and improvements to existing drains. The 50-signature requirement of MCL 280.441 applied to the combined petition and the #181-0 Drain petition was invalid because it requested consolidation of the drainage district's established tributary drains but was signed by only five freeholders within the drainage district. The circuit court erred by concluding that the drain commissioner had authority to act on the petition.

2. Under MCL 280.441(2), the drain commissioner must give notice of the time, date, and place of the meeting scheduled to determine whether consolidation of two or more drainage districts would be conducive to public health, convenience, or welfare. The notice must not be misleading or make any untrue statement or fail to explain or omit any fact that would be important to an affected person when making his or her decision regarding the consolidation. The notice sent to the Osborn plaintiffs provided the date, time, and place of the board of determination hearing and that evidence would be taken regarding the improvements, maintenance, and consolidation proposed as well as a specific description of the area where the work would be done. The notice was misleading because all the districts of the drainage district were included within the proposed project, but only certain sections within various townships were listed in the notice as being included within the consolidation. A person living outside those sections of the townships listed would not have readily understood that his or her property would be liable for an assessment if the consolidation was allowed.

3. Under MCL 280.161, an affected party must challenge minor errors and irregularities under the Drain Code by filing for a writ of certiorari in the circuit court within 10 days after the final order of determination is issued. However, certiorari is not the exclusive remedy under the Drain Code; equity will provide a remedy when the drain commissioner acts without jurisdiction and there is no adequate remedy at law. The circuit court properly exercised equitable jurisdiction because the Osborn plaintiffs had challenged the drain commissioner's authority to act on the #181-0 Drain petition absent the signatures of 50 property owners required by MCL 280.441(1). This was not a minor error or

irregularity under the Drain Code and the type of error that the Drain Commissioner could correct.

Reversed in part and affirmed in part.

1. DRAINS — CONSOLIDATION OF DRAIN DISTRICTS — PETITIONS — SIGNATURE REQUIREMENTS.

A petition seeking to consolidate two or more drainage districts must be signed by at least 50 property owners within the proposed consolidated drainage district under MCL 280.441, but a petition to clean out, relocate, widen, or straighten a drain need be signed only by 5 freeholders whose land would be subject to assessment for the improvements under MCL 280.191; under MCL 280.194, property owners subject to a proposed assessment need file only one petition for one proceeding when maintenance, improvements, and consolidation of drainage districts are being requested, but the signatures of 50 property owners are required for combined petitions that include a request for consolidation.

2. DRAINS — CONSOLIDATION OF DRAIN DISTRICTS — BOARD OF DETERMINATION HEARING — NOTICE REQUIREMENT.

The drain commissioner must give notice of the time, date, and place of the meeting scheduled to determine whether consolidation of two or more drainage districts would be conducive to the public health, convenience, or welfare; the notice must not be misleading or make any untrue statement or fail to explain or omit any fact that would be important to an affected person when making his or her decision regarding the consolidation (MCL 280.441[2]).

3. DRAINS — DRAIN CODE — VIOLATIONS — EQUITABLE REMEDIES.

An affected party must challenge minor errors and irregularities under the Drain Code by filing for a writ of certiorari in the circuit court within 10 days after the final order of determination is issued; however, certiorari is not the exclusive remedy under the Drain Code; equity will provide a remedy when the drain commissioner acts without jurisdiction and there is no adequate remedy at law (MCL 280.161).

*Smith Bovill, P.C.* (by *David B. Meyer* and *Elian E. H. Fichtner*), for Elba Township, David Osborn, Mark Crumbaugh, and Cloyd and Rita Cordray.

*Fahey Schultz Burzych Rhodes, PLC* (by *Stacy L. Hissong*), and *Clark Hill PLC* (by *Douglas R. Kelly* and *Kristin B. Bellar*) for the Gratiot County Drain Commissioner.

Before: M. J. KELLY, P.J., and FITZGERALD and WHITBECK, JJ.

WHITBECK, J. Plaintiff, Elba Township, and intervening plaintiffs, David Osborn, Mark Crumbaugh, Cloyd Cordray, and Rita Cordray (the Osborn plaintiffs), appeal as of right the March 8, 2011, order granting summary disposition in favor of defendant, the Gratiot County Drain Commissioner. Elba Township filed a complaint against the Drain Commissioner, seeking to enjoin the consolidation of 47 drainage districts within Gratiot County because the petition for consolidation lacked the requisite number of signatures. Elba Township, the Osborn plaintiffs, and the Drain Commissioner moved for summary disposition. The circuit court denied plaintiffs' motion and granted summary disposition in the Drain Commissioner's favor. We reverse in part and affirm in part.

## I. BASIC FACTS

### A. PROJECT SCOPE

This appeal involves the consolidation of 47 drain districts located in Gratiot County. On May 4, 2010, a board of determination approved a project for the consolidation and maintenance of the #181-0 Drain and all the established tributary drains of the #181-0 Drain located in Gratiot County. The drainage district boundaries for each of the established tributaries proposed to be consolidated are located wholly within the #181-0 Drain Drainage District. The consolidation and maintenance project covers more than 30,000 acres of land and more than 80 miles of drain, and spans six townships and one village. The consolidated drain system is known as the No. 181 Consolidated Drain.

B. THE PETITIONS

In March 2009, Dennis Kellog filed with the Gratiot County Drain Commission a petition that five freeholders[1] from North Star Township signed. The petition sought the consolidation, cleaning out, relocating, widening, deepening, straightening, tiling, extending, or relocating along a highway for the "181-0 Drain and all established tributary drains, located and established in the Township of Northstar, Washington & Elba, in the County of Gratiot, State of Michigan." The #181-0 Drain petition further stated that the consolidation and maintenance was needed "for the reason that flooding and erosion problems are occurring" and that the consolidation and maintenance "of the drains is necessary and conducive to the public health and welfare of the North Star, Washington & Elba Townships."

Before receiving the #181-0 Drain petition, the Drain Commissioner had received petitions for consolidation and maintenance of two other drains, both of which are established #181-0 Drain tributaries. Specifically, the Drain Commissioner received petitions for the consolidation, cleaning out, relocating, widening, deepening, straightening, tiling, extending, or relocating along a highway of the #135-0 Drain and the #156-0 Drain and all established tributary drains. Also, after receiving the #181-0 Drain petition, the Drain Commissioner received a petition for the consolidation, cleaning out, relocating, widening, deepening, straightening, tiling, extending, or relocating along a highway of the #192-0 Drain and all established tributary drains. The #192-0 Drain is also an established #181-0 Drain tributary.

---

[1] A freeholder is defined as, "[o]ne having title to realty; either of inheritance or for life; either legal or equitable title." Black's Law Dictionary (6th ed).

## C. THE SPICER STUDY

In response to the various petitions, the Drain Commissioner retained Spicer Group, Inc., to survey, inspect, and evaluate the drainage issues. The survey and inspection revealed that the drains within the #181-0 Drain Drainage District had generally not been maintained for 30 years and had degraded to the point that the drainage systems within the #181-0 Drain Drainage District required repairs. The Spicer Group concluded that maintenance of and improvements to the #181-0 Drain without additional maintenance and improvements on the established tributary drains would not provide an adequate solution to the drainage problems that had been identified within the drainage district. Therefore, it proposed a consolidation of the established tributary drains within the #181-0 Drain Drainage District. According to Spicer Group, consolidation of the established tributary drains within the #181-0 Drain Drainage District was the most cost- effective way to address problems that had been identified within the #181-0 Drain Drainage District.

## D. THE BOARD OF DETERMINATION HEARING

On the basis of the Spicer Group's recommendations, the Drain Commissioner determined that the best and most cost-effective way to address the issues raised in the petitions was to design a project within the #181-0 Drain Drainage District, which necessarily included consolidation of its tributary drains. The Drain Commissioner then appointed a board of determination to hear evidence and determine whether the actions requested in the #181-0 Drain petition were necessary and conducive to the public health, convenience, or welfare. The board of determination convened and held a hearing on May 4, 2010.

Before the May 4, 2010 hearing, all the municipalities located within the #181-0 Drain Drainage District—the townships of Elba, Fulton, Hamilton, Newark, North Star, and Washington, and the village of Ashley—were notified of the date and place of the board of determination meeting. Additionally, notice of the meeting was sent to the individual property owners and published in the *Gratiot County Herald.* The notice stated:

> *Notice Is Hereby Given* to you as a person liable for an assessment that the Board of Determination . . . will meet on Tuesday, May 4, 2010 at 10:00 A.M., o'clock in the forenoon, North Star Township Hall located at 2840 E. Buchanan Road, North Star Township, Michigan to hear all interested persons and evidence and to determine whether the drain in *Drainage District No. 181-10 Wolf & Bear known as the #181-10 Wolf & Bear Drain,* as prayed for in the Petition for consolidating, cleaning out, relocating, widening, deepening, straightening, tiling, extending or relocating along a highway, *and all established tributary drains, located and established in the Township(s) of Elba, Sections 18 & 19, North Star Sections 25, 26, 27, 28, 29, 32 and 36, Washington, Sections 1, 12, 23 and 24, County of Gratiot, State of Michigan.* Petition further shows that . . . said consolidating, clearing out, relocating, widening, deepening, straightening, tiling, extending or relocating along a highway of the drains is necessary and conducive to the public health and welfare of Elba, North Star and Washington Township(s). Dated March 23, 2009 . . . for the protection of the public health of the following: Elba, North Star and Washington Township(s).

> \* \* \*

> *You Are Further Notified,* that persons aggrieved by the decisions of the Board of Determination may seek judicial review in the Circuit Court for the County of Gratiot within ten (10) days of the determination.[2]

---

[2] Emphasis added.

During the board of determination hearing, the Spicer Group provided the board and all attendees with maps, diagrams, and plans that described the current condition of the drains and the proposed consolidation project. The board of determination approved the project by a 2-1 margin. Following the meeting, an order of necessity was prepared and filed in the Drain Commissioner's office. The order provided that the board had determined that the work set forth in the #181-0 Drain petition was necessary and conducive to the public health, convenience, and welfare. The order listed the "#181-10 drain and all established tributaries located and established in the Township(s) of Elba, Sections 18 & 19, North Star Sections 25, 26, 27, 28, 29, 32 and 36, Washington, Sections 1, 12, 23 and 24, County of Gratiot, State of Michigan."

### E. THE ASSESSMENTS

In September 2010, the Drain Commissioner sent out notifications of at-large assessments to the townships of Elba, Fulton, Hamilton, Newark, North Star, and Washington, and the village of Ashley. According to the Drain Commissioner, after the notices of assessments were mailed, the Drain Commissioner determined that adding more land to the drainage district might be necessary, and, accordingly, in November 2010, the Drain Commissioner issued a notice of reconvened board of determination. Included in the notice was a list of the 47 drains consolidated at the May 4, 2010 hearing "known as the No. 181 Consolidated Drain in the Townships of Elba, Fulton, Hamilton, Newark, North Star and Washington . . . ." The notice provided that the reconvened hearing would be held on November 11, 2010, to determine the necessity of adding lands to the No. 181 Consolidated Drain. The Drain Commissioner

sent the notice of the reconvened hearing to all the municipalities and individual property owners within the drainage district.

### F. THE SECOND BOARD OF DETERMINATION HEARING

At the November 11, 2010, hearing, the attendees were told that the purpose of the hearing was to add an additional 700 acres of land to the No. 181 Consolidated Drain project. The reconvened board of determination approved the addition and a revised order of necessity was issued that same day. The revised order identified the 47 drains previously consolidated at the May 4, 2010, hearing. The revised order further stated that it had been determined that "it is necessary and conductive to the public health [and] convenience or welfare to add lands to the Consolidated Drain No. 181 as specified by the Board of Determination."

### G. THE FINAL ORDER OF DETERMINATION

On December 22, 2010, the Drain Commissioner issued a final order of determination. The order of determination listed and described all the drains to be consolidated into the No. 181 Consolidated Drain.

### H. COURT PROCEEDINGS

On November 8, 2010 (before the reconvened board of determination hearing), Elba Township filed a complaint against the Drain Commissioner. Elba Township alleged that the Drain Commissioner's actions—consolidating the #181-0 Drain Drainage District's established tributary drains—violated the Drain Code.[3] Specifically, Elba Township alleged that the Drain Commissioner was

---

[3] MCL 280.1 *et seq.*

required to reject the #181-0 Drain petition because it did not have enough signatures. According to Elba Township, MCL 280.441 requires that at least 50 freeholders sign a petition for consolidation, but only five freeholders actually signed the #181-0 Drain petition. Additionally, Elba Township stated that the notice of the May 4, 2010, board of determination hearing was deficient because it failed to refer properly to the districts affected by the proposed consolidation. Elba Township requested that the circuit court enjoin the Drain Commissioner from proceeding with the proposed consolidation and requested a preliminary injunction until the court could hold a full trial on the merits.

The circuit court held a hearing on Elba Township's motion for a preliminary injunction in mid-December 2010. At the hearing, the circuit court declined to grant Elba Township's motion for a preliminary injunction concluding that as the dispute involved only legal issues, it could be resolved through a motion for summary disposition. The circuit court signed a written order denying Elba Township's motion for a preliminary injunction in early January 2011.

Thereafter, the Drain Commissioner filed a motion for summary disposition, arguing that MCL 280.441 did not apply. Rather, the Drain Commissioner argued, MCL 280.191 and MCL 280.194 applied and, when reading those sections together, only five signatures were required. With respect to notice, the Drain Commissioner argued that MCL 280.72 only requires that notice be given to the public of the date, time, and place of the board of determination meeting and that such notice was provided.

In mid-January 2011, the Osborn plaintiffs moved to intervene as of right. The Osborn plaintiffs also filed a complaint alleging that by not giving them notice that

their property was subject to the No. 181 Consolidated Drain project, the Drain Commissioner had violated the Drain Code and their due process rights. In early February 2011, the circuit court granted the Osborn plaintiffs' motion to intervene.

The Drain Commissioner then moved for summary disposition of the Osborn plaintiffs' claims. The Drain Commissioner argued that the circuit court must dismiss the Osborn plaintiffs' claims because the Drain Commissioner had complied with the Drain Code. Additionally, the Drain Commissioner argued that the May 4, 2010, notice of the No. 181 Consolidated Drain project did not violate the Drain Code or the Osborn plaintiffs' due process rights.

Elba Township and the Osborn plaintiffs opposed the Drain Commissioner's motions for summary disposition and filed a cross-motion for summary disposition in their favor. The circuit court held a hearing on the motions for summary disposition in early March 2011. After hearing the parties' arguments, the circuit court granted the Drain Commissioner's motions for summary disposition. Elba Township and the Osborn plaintiffs now appeal.

## II. THE DRAIN PETITIONS

### A. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny a motion for summary disposition.[4] We also review de novo as a question of law the interpretation of a statute.[5]

[4] *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).

[5] *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008).

" 'Proceedings under the [D]rain [C]ode, other than condemnation proceedings, are administrative proceedings.' "[6] The circuit court reviews " '[a]n administrative agency decision . . . to determine whether the decision was authorized by law and supported by competent, material, and substantial evidence on the whole record.' "[7] Additionally, the Michigan Supreme Court has explained that it is "not inclined to reverse proceedings taken under the general drain law absent showing of very substantial faults."[8]

### B. OVERVIEW

The circuit court erred when it determined only five signatures were required for the #181-0 Drain petition. As we noted above, that petition provided: "Petitioners hereby petition for consolidation, cleaning out, relocating, widening, deepening, straightening, tiling, extending or relocating along a highway of the following drains: #181-0 Drain and all established tributary drains, located and established in the Township of North Star, Washington & Elba, in the County of Gratiot, State of Michigan." The circuit court concluded that the petition was governed under MCL 280.191 and MCL 280.194 and that MCL 280.441 was inapplicable. This conclusion was erroneous.

### C. STATUTORY PROVISIONS

#### 1. MCL 280.191

Contained within chapter 8 of the Drain Code is MCL

---

[6] *Barak v Oakland Co Drain Comm'r*, 246 Mich App 591, 597; 633 NW2d 489 (2001) (citation omitted).

[7] *Id.*, quoting *Mich Ed Ass'n Political Action Comm*, 241 Mich App 432, 443-444; 616 NW2d 234 (2000), citing Const 1963, art 6, § 28 and *Ansell v Dep't of Commerce* (*On Remand*), 222 Mich App 347, 354; 564 NW2d 519 (1997).

[8] *In re Fitch Drain No 129*, 346 Mich 639, 647; 78 NW2d 600 (1956).

280.191, which addresses maintenance and improvement of county drains. It provides in relevant part:

> When a drain or portion thereof, which traverses lands wholly in 1 county, and lands only in 1 county which is subject to assessment, needs cleaning out, relocating, widening, deepening, straightening, tiling, extending, or relocating along a highway, . . . any 5 or at least 50% of the freeholders if there are less than 5 freeholders whose lands shall be liable to an assessment for benefits of such work, may make petition in writing to the commissioner setting forth the necessity of the proposed work . . . .[9]

Notably absent from MCL 280.191 is the word "consolidation."

### 2. MCL 280.441

Chapter 19 of the Drain Code addresses consolidation of drainage districts under MCL 280.441, which provides in relevant part:

> Two or more drainage districts located in the same county and in the same drainage basin or in adjoining basins, may consolidate and organize as a single drainage district upon the filing of a petition for consolidation with the drain commissioner of the county setting forth the reason for the proposed consolidation. The consolidation may include land not within an existing drainage district if requested in the petition. The petition shall be signed by at least 50 property owners within the proposed consolidated drainage district.[10]

### 3. MCL 280.194

MCL 280.194, however, is the section of the Drain Code that has caused the confusion in this case. Section

---

[9] MCL 280.191.

[10] MCL 280.441(1).

194 deals with the petitions and proceedings for maintenance, improvements, and consolidation and provides:

> In any petition filed under this chapter it shall not be necessary for the petitioners to describe said drain other than by its name or to describe its commencement, general route and terminus. For any work necessary to be done in cleaning out, widening, deepening, straightening, *consolidating*, extending, relocating, tiling or relocating along a highway, . . . and for any and all such proceedings, only 1 petition and proceeding shall be necessary.[11]

### D. INTERPRETING THE PROVISIONS OF THE DRAIN CODE

The Drain Commissioner argues that MCL 280.194 allows the use of only one petition when petitioning for maintenance, improvements, and consolidations of existing drains. Therefore, he contends, the petition requirements of MCL 280.191 apply to the #181-0 Drain and only five signatures were needed. This argument, however, ignores the basic principles of statutory interpretation. When construing a statute, courts must read the provisions in the context of the entire statute, and the courts should avoid any construction that would render any part of a statute surplusage or nugatory.[12]

MCL 280.194 does not act to negate the signature requirements of MCL 280.441. Instead, MCL 280.194 recognizes that improvement and maintenance of drains is often ancillary to consolidation projects. Therefore, MCL 280.194 authorizes the use of one petition and one proceeding when maintenance, improvements, and consolidation are being requested. Otherwise, at least two petitions and two board of determination proceedings would be required.

---

[11] MCL 280.194 (emphasis added).

[12] *Robinson v City of Lansing*, 486 Mich 1, 21; 782 NW2d 171 (2010).

However, the use of a single petition does not change the end result, which is both consolidation and improvements. And if two separate petitions had in fact been made—one for improvements and one for consolidation—no one would have questioned the need for 50 signatures on the petition for consolidation. Therefore, the requirements of MCL 280.191 and MCL 280.441 *each* apply. Otherwise, the signature requirements of MCL 280.441 would have no effect whenever a person petitions for both maintenance and consolidation of a drain. Given that MCL 280.441 contains a significantly more onerous signature requirement, thus indicating the Legislature's intention that it should be harder to initiate a consolidation proceeding than a proceeding for maintenance, such a result is incongruous. Had the Legislature intended this result under MCL 280.441, it could have easily referred to the signature requirements in MCL 280.191. Manifestly, however, it did not.

Further, the Drain Commissioner's argument would essentially read the word "consolidation" into MCL 280.191. However, we must presume that the omission of the word "consolidation" in MCL 280.191, and its inclusion in MCL 280.441, was intentional.[13] It was also logical to omit the word "consolidation" in MCL 280.191 because consolidation of drainage districts has the potential to affect a much larger segment of the population than maintenance and improvements to existing drains.

In determining that MCL 280.191 applied, the circuit court relied, in part, on its mistaken conclusion that MCL 280.191 and MCL 280.441 cannot be applied together consistently. The circuit court stated in relevant part:

---

[13] See *People v Monaco*, 474 Mich 48, 58; 710 NW2d 46 (2006).

What kind of proceeding is necessary under section 194, is it a section 191 proceeding or is it a section 441 proceeding? The answer to that question has got to be, it's a section 191 proceeding.

And what's the important difference? Two of them. First, how many signatures do we have to have on the petition—191 says five signatures, 441 says 50 signatures to consolidate. But just as importantly, who sits on the board of determination depends upon whether you're working under section 191 to improve a drain, or under section 441 to consolidate drains. Because if we're working to improve a drain under section 191, then the people who sit on the board have to be subject to an assessment for the improvements. We have to have five people who are going to have to share in paying the bill, petition to improve a drain. But under section 441, the people on the board of determination of necessity of consolidating drains can't live in the consolidated districts, they have to live in the county, but not in the districts, therefore, they have no direct interest in the outcome of the request to consolidate and to create a consolidated district.

You can't have one proceeding under section 194 involving consolidation and improvements, unless you make a decision as to whether or not that proceeding is governed by section 191 with five signators in the district, or section 441 with 50 signators, and a board comprised of individuals outside the district. And 194, it seems to me, resolves that question in a way that, to me at least, is clear. There's only one petition needed, that petition has to be in accordance with the requirements of 191. And there's only one proceeding required, and that proceeding is governed by the requirements of section 191.

Thus, the circuit court's decision was based, in part, on its understanding that the board of determination's composition would be different under MCL 280.191 and 280.441. The circuit court, however, misstated the law. MCL 280.441(1) provides in part that "[a]s soon as practicable after the filing of a petition, the drain

commissioner . . . may appoint a board of determination composed of 3 disinterested property owners to determine the necessity of the consolidation." MCL 280.441(1) further provides that "[m]embers of a board of determination shall be residents of the county but not of the proposed consolidated drainage district or of a drainage district a part of which is to be included in the proposed consolidation."

MCL 280.191 does not specifically refer to the composition of the board of determination. However, it does cross-reference MCL 280.72, which provides in relevant part: "As soon as practicable after the filing of a petition, the commissioner authorized to act on the petition . . . may appoint a board of determination composed of 3 disinterested property owners." MCL 280.72(1) goes on to state that "[m]embers of boards of determination shall be residents of the county but not of a township, city, or village affected by the drain, and may not be members of the county board of commissioners of the county."

Therefore, the circuit court erred when it determined that the composition of the board members was different under each section. Rather, the two sections are entirely consistent. In fact, MCL 280.441 and MCL 280.72 are consistent in almost every aspect. The only inconsistency in applying MCL 280.441 and MCL 280.191 is the signature requirement.

The Drain Commissioner contends that this Court's decision in *Kramer v Dearborn Hts* supports his position.[14] *Kramer*, however, dealt with chapters 19 and 20 of the Drain Code, not chapter 8. In *Kramer*, the plaintiffs challenged the consolidation of several drainage districts, arguing that consolidation

_____

[14] *Kramer v Dearborn Hts*, 197 Mich App 723; 496 NW2d 301 (1992).

should have been sought under chapter 19 of the Drain Code not chapter 20.[15] This Court found no merit in the plaintiffs' claim because chapter 20 provided a basis for the consolidation. This Court recognized that MCL 280.486 provides that a petition for consolidation is sufficient if only the city signed it.[16] Further, MCL 280.484 specifically provides that "[i]n operating under the terms of [chapter 20], the several boards and officials shall not be limited by the provisions contained in other chapters of this act. . . ." Chapter 8, however, contains no provisions allowing the Drain Commissioner to disregard the signature requirements contained in MCL 280.441. Therefore, *Kramer* is simply inapplicable to this case.

The Drain Commissioner's reliance on a Michigan Attorney General opinion[17] to support his argument is also unpersuasive. In his opinion, the Attorney General addressed whether it was "legally permissible under the present drain law to consolidate into one petition a petition for consolidation of drains and also a petition for the cleaning out, relocating, widening, etc. of said drains."[18] The Attorney General concluded "that the procedure for consolidation and improvement work on the drain are the same in relation to both county and inter-county drains."[19] The Attorney General stated that "[i]t seems to follow that a petition to consolidate and to clean out, widen, deepen, straighten or extend may be combined . . . ."[20]

---

[15] *Id.* at 727.

[16] *Id.*

[17] 1 OAG, 1955, No 2314, p 600 (November 3, 1955).

[18] *Id.*

[19] *Id.* at 601.

[20] *Id.*

Relying on this opinion, the Drain Commissioner asserts that a single petition may implement all the actions contemplated in MCL 280.194, including consolidation. The Attorney General opinion, however, interpreted a prior version of the Drain Code. In 1955, at the time of the opinion, MCL 265.16 as amended by 1955 PA 44, provided that

[a]ny 2 or more drainage districts . . . may be consolidated and organized as a single drainage district upon the filing of a petition therefor, which petition and proceedings . . . shall be subject to the same provisions relating to petitions contained in [MCL 267.1] . . . .

Former MCL 267.1 (now MCL 280.191) provided that only five freeholders were required to sign a petition for maintenance and improvements. Therefore, at the time of the Attorney General opinion, the signature requirements were the same for maintenance, improvements, *and* consolidation. That is no longer the case. Since the Attorney General opinion was written in 1955, former MCL 265.16 has been amended six times into its current version, MCL 280.441, which now requires 50 signatures. Therefore, the Attorney General Opinion does not apply to this case.

In sum, the Drain Code requires 50 signatures for the #181-0 Drain petition. MCL 280.194 allows the use of a single petition and proceeding "[f]or any work necessary to be done in cleaning out, widening, deepening, straightening, consolidating, extending, relocating, tiling or relocating along a highway . . . ." However, the 50-signature requirement of MCL 280.441 still applies to a combined petition. Therefore, the #181-0 Drain petition was invalid, and the Drain Commissioner was without authority to act upon it.[21]

---

[21] See *Grand Rapids & I R Co v Round*, 220 Mich 475, 478-479; 190 NW 248 (1922).

### III. NOTICE

#### A. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny a motion for summary disposition.[22] We also review de novo as a question of law the determination whether a party has been afforded due process.[23]

#### B. LEGAL REQUIREMENTS

Generally, due process requires notice of the nature of the proceedings and an opportunity to be heard in a meaningful time and manner.[24] Notice must be reasonably calculated to apprise interested parties of the pendency of the action and must afford them an opportunity to present objections.[25] "The kind of notice required depends on the circumstances of the case . . . ."[26]

#### C. DEFECTIVE NOTICE

The Osborn plaintiffs do not argue that they did not receive notice. Rather, they argue that the notice they received was defective. We have found no caselaw directly on point, but *Alan v Wayne Co* has some persuasive value.[27] *Alan* dealt with the validity of stadium bonds issued by Wayne County to finance a new

---

[22] *Latham*, 480 Mich at 111.

[23] *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005).

[24] *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 606; 683 NW2d 759 (2004).

[25] *Dusenbery v United States*, 534 US 161, 168, 170; 122 S Ct 694; 151 L Ed 2d 597 (2002); *In re Petition by Wayne Co Treasurer*, 478 Mich 1, 9; 732 NW2d 458 (2007).

[26] *Alan v Wayne Co*, 388 Mich 210, 351; 200 NW2d 628 (1972).

[27] *Id.*

stadium, which would eventually cost the county $371 million.[28] Among the many arguments heard by the Michigan Supreme Court was the issue of notice and whether the notice of intent to issue the bonds complied with due process.[29]

The Supreme Court determined that the notice was "defective in substance because it fail[ed] to inform the reader of its purpose and because it [was] misleading."[30] The Court stated that "[t]he purpose of the notice is to create and determine a method of objecting to a bond issue by petitioning for a vote."[31] The Court further explained:

> To comport with due process any notice respecting petition rights on bonds supported by any pledge of tax power must state to whom the notice is issued and for what purpose: (a) it must tell, in this case, the electors and taxpayers of Wayne County that it is issued for their benefit; (b) it must contain enough information so that it can be told from its face in plain and understandable language that the notice concerns some particular right or obligation respecting the subject matter of the notice; (c) the notice must explain the nature of the right (or obligation) and what is required to exercise it and the consequence of not exercising it; (d) regarding the subject matter of the notice there must be enough information so that a meaningfully informed decision respecting the right can reasonably be made from information supplied in plain language on the face of the notice.[32]

After review of the notice, the Court noted that the notice of intent failed to tell the taxpayer (1) what a revenue bond was, (2) how much the stadium would

---

[28] *Id.* at 233.

[29] *Id.* at 344.

[30] *Id.* at 351.

[31] *Id.*

[32] *Id.* at 352.

cost, (3) how the bonds would be paid, especially if the stadium stood empty, and (4) why the notice was given.[33] The Court in *Alan* concluded that the notice was defective because the method used was not reasonable under the circumstances.[34] The notice was also defective because it failed to inform the reader of the bond's purpose in order to allow the taxpayers a method of objecting to a bond issue by petitioning for a vote. The Court further determined that it was misleading because it failed to inform taxpayers that the bonds could result in higher taxes.[35] Therefore, the Court concluded, the bonds were invalid because there was no valid notice.[36]

Although *Alan* does not deal with drain assessments, we can apply its general principles to this case. The notice here was not as vague or defective as that in *Alan*. The notice here provided the date, time, and place of the board of determination hearing as MCL 280.72(2) and MCL 280.441(2) require. It also explained that the purpose of the board of determination hearing was to hear all interested parties and take evidence regarding improvements, maintenance, and consolidation of the "#181-10 Wolf & Bear Drain." The notice further provided that persons feeling aggrieved by the decision could seek judicial review within 10 days of the determination.

However, the notice was misleading. In *Alan*, the Supreme Court stated that "there must be enough information so that a meaningfully informed decision respecting the right can reasonably be made from information supplied in plain language on the face of

---

[33] *Id.* at 341-342.

[34] *Id.* at 350-351.

[35] *Id.* at 352.

[36] *Id.* at 354.

the notice."[37] "As phrased it must not make any misleading or untrue statement; or fail to explain, or omit any fact which would be important to the taxpayer or elector in deciding to exercise his right. In short, the notice may not be misleading under all the circumstances."[38] While, the notice provided only a very general description of the activities sought to be conducted, it provided a specific description of the area where the work would be done. The notice stated that the hearing would be to determine the necessity of

> consolidating, cleaning out, relocating, widening, deepening, straightening, tiling, extending or relocating along a highway, and all established tributary drains, *located and established in the Township(s) of Elba, Sections 18 & 19, North Star Sections 25, 26, 27, 28, 29, 32 and 36, Washington, Sections 1, 12, 23 and 24 . . . .*"[39]

This description was inaccurate because the project actually involved all the districts contained within the "#181-10 Wolf & Bear Drain" Drainage District. A person not living within the specific sections of the townships mentioned in the notice would not readily understand that the project would affect his or her property as well. Therefore, that person would be unable to make a meaningful and informed decision regarding his or her rights. Thus, we conclude, the notice was misleading.

The Drain Commissioner, however, argues that the intervening plaintiffs had a duty to inquire whether their land would be affected. Specifically, the Drain Commissioner argues that "[r]ecipients of notice have an affirmative duty to inquire when the notice is 'worded in a manner which would not mislead a tax-

---

[37] *Id.* at 352.

[38] *Id.* at 353.

[39] Emphasis added.

payer or voter in deciding how to respond to the notice given.' " But the Drain Commissioner has failed to provide any authority to support his argument that the Osborn plaintiffs had an affirmative duty to inquire whether their land was affected. Although the Drain Commissioner quotes *Trussell v Decker*,[40] the quotation is taken out of context.

In *Trussell*,[41] this Court held that a notice was misleading. The notice stated that all objections and comments to a proposed water project would be heard at a public hearing. However, the notice failed to inform the plaintiff that her objections had to be presented in writing at or before the hearing in order to preserve her rights. In holding that the notice was misleading, this Court cited *Alan*, noting that "the *Alan* Court stressed that a notice must be worded in a manner which would not mislead a taxpayer or voter in deciding how to respond to the notice given[.]"[42] Nowhere in the opinion, however, did this Court state that a taxpayer has an affirmative duty to inquire. Further, the Drain Commissioner's argument is a contradiction in and of itself. If a notice is "worded in a manner which would not mislead a taxpayer," there would be no reason for the taxpayer to inquire whether he or she was affected.

The Drain Commissioner's reliance on *Muskegon Twp v Muskegon Co Drain Comm'r*[43] is similarly unpersuasive. The Drain Commissioner cites *Muskegon Twp* for the proposition that the Osborn plaintiffs had a duty to inquire into the details of the #181-0 Drain project if they did not believe the notice was clear. But *Muskegon*

---

[40] *Trussell v Decker*, 147 Mich App 312, 323; 382 NW2d 778 (1985).

[41] *Id.* at 324-325.

[42] *Id.* at 323.

[43] *Muskegon Twp v Muskegon Co Drain Comm'r*, 76 Mich App 714; 257 NW2d 224 (1977).

*Twp* did not discuss or address the issue of a notice of a determination of necessity. Nor did it address the issue of whether a notice was misleading. Instead, the issue in *Muskegon Twp* was whether the Drain Code was "unconstitutional in that it fails to require that notice be given upon the filing of the board of review's report."[44] The appellants had notice of the board of review meeting, and "[n]o claim [was] made that they were denied an opportunity to participate."[45] Rather, they complained that they "did not officially receive a notice of when the [board of review] report was filed."[46] This Court stated that "[a]lthough it would be better for the statute to provide a specific time limit for the filing of the report so that one would know exactly when to check for the report, we do not find that the burden of checking with the drain commissioner is fatal."[47]

We do note that this case is somewhat analogous to *Thayer Lumber Co v City of Muskegon*.[48] In *Thayer Lumber Co*, the city of Muskegon adopted a resolution creating and constructing a sewer district, which was to be funded through a special assessment.[49] Notice of the improvement was published in the newspaper. However, the notice failed to describe the boundaries of the sewer district or the land that would be affected.[50] The Supreme Court held that the notice was invalid and stated:

[44] *Id.* at 719.

[45] *Id.*

[46] *Id.*

[47] *Id.* at 720.

[48] *Thayer Lumber Co v City of Muskegon*, 152 Mich 59; 115 NW 957 (1908).

[49] *Id.* at 61-62.

[50] *Id.* at 62.

> Where notice is required to be given, it is imperative that such notice, when brought to the attention of any person interested, shall apprise him at least of the approximate location of the proposed improvement and of the property to be assessed therefor. This notice contained no such information. From reading it no person could ascertain in what part of the city the proposed sewers were to be built, and much less whether or not his property was liable to be assessed therefor.[51]

This case presents the inverse of *Thayer Lumber Co.* The Drain Commissioner sent notice to the individual property owners. And the notice apprised the individual property owners of the location of the proposed drain project. However, the location of the project was erroneous. From reading the notice, no person living outside the sections specifically mentioned could have ascertained whether his or her property was liable to be assessed. Therefore, we conclude, the notice was misleading.

### IV. EQUITABLE JURISDICTION

### A. STANDARD OF REVIEW

The Drain Commissioner raised the issue of jurisdiction below, and the circuit court determined that it had equitable jurisdiction to hear the claim. "Lack of jurisdiction of the subject matter may be raised at any time and the parties to an action cannot confer jurisdiction by their conduct or action nor can they waive the defense by not raising it."[52] We review de novo the determination of whether a circuit court possesses subject-matter jurisdiction.[53] To the extent this issue

---

[51] *Id.* at 66-67.

[52] *Paulson v Secretary of State*, 154 Mich App 626, 630-631; 398 NW2d 477 (1986).

[53] *People v Glass*, 288 Mich App 399, 400; 794 NW2d 49 (2010).

involves interpretation of the Drain Code, we also review de novo legal issues concerning statutory interpretation.[54]

### B. MCL 280.161

The Drain Commissioner argues that this suit was barred because of Elba Township's and the Osborn plaintiffs' failure to comply with the Drain Code's review procedures. The Drain Code provides several limited avenues for judicial review, and the Drain Commissioner cites three provisions of the Drain Code that provide review procedures and limitations periods for drain challenges: MCL 280.72, MCL 280.72a, and MCL 280.161. MCL 280.72 and MCL 280.72a do not apply because both sections deal with challenges to the order of determination. Elba Township and the Osborn plaintiffs, however, are not challenging the finding of necessity or the order of determination. Rather, they are challenging the validity of the proceedings themselves. Therefore, MCL 280.161 is applicable to this case and provides as follows:

> The proceedings in establishing any drain and levying taxes therefor shall be subject to review on certiorari as herein provided. A writ of certiorari for any error occurring before or in the final order of determination shall be issued within 10 days after a copy of such final order is filed in the office of the drain commissioner . . . . If no certiorari be brought within the time herein prescribed, the drain shall be deemed to have been legally established, and the taxes therefor legally levied, and the legality of said drain and the taxes therefor shall not thereafter be questioned in any suit at law or equity . . . . And if any error be found in the proceedings, the court shall direct the commissioner to correct such error or errors and then proceed the same as though no error had been made.

[54] *Id.*

C. INTERPRETING THE STATUTE

Relying on MCL 280.161, the Drain Commissioner argues that the circuit court lacked jurisdiction to hear Elba Township's and the Osborn plaintiffs' claims. We find the Drain Commissioner's argument unpersuasive. Early Supreme Court precedent recognized that certiorari is not the exclusive remedy under the Drain Code. In *Pere Marquette R Co v Auditor General*,[55] the Supreme Court stated:

> We are unable to accept the proposition that certiorari is an exclusive remedy under the drain law, for this court has held under certain circumstances that equity proceedings to restrain the enforcement of a drain assessment may run collaterally in aid of certiorari to review a drain commissioner's action (*Drain Commissioner* v. *Baxter*, 57 Mich [127, 129; 23 NW 711 (1885)]), and that in a proper case equity has jurisdiction to restrain the return of lands as delinquent for drain taxes where the proceedings are illegal and void.[56]

Later, in *Clinton v Spencer*,[57] the Supreme Court held that when irregularities rendered drain proceedings void from their inception, so that they could not be corrected on certiorari, the plaintiffs would not be limited to certiorari.

Shortly thereafter, the Supreme Court decided *Fuller v Cockerill*.[58] In *Fuller*, the plaintiffs had filed a suit in equity to enjoin the Muskegon County Superintendent of Drains from proceeding with the construction of a sewer drain entirely within the village of Whitehall.[59]

[55] *Pere Marquette R Co v Auditor General*, 226 Mich 491, 494; 198 NW 199 (1924).

[56] *Id.*

[57] *Clinton v Spencer*, 250 Mich 135, 155-156; 229 NW 609 (1930).

[58] *Fuller v Cockerill*, 257 Mich 35; 239 NW 293 (1932).

[59] *Id.* at 35-36.

The superintendent argued that the plaintiffs' remedy was in certiorari and that a court of equity lacked jurisdiction.[60] The Supreme Court rejected this argument[61] and determined that defendants were without authority to construct the sewer drain because the drain was to be located completely within the village limits.[62] Therefore, the superintendent was "wholly without jurisdiction or authority to act, the proceeding [was] void, and equity [had] power to restrain."[63] The Court stated that if the superintendent was "wholly without authority to lay this drain, the ultimate result of assessment of benefits and the collection from plaintiffs of the drain tax would be to deprive them of their property without due process of any sort."[64]

In *Lake Twp v Millar*,[65] the Supreme Court reaffirmed its prior holdings that certiorari is not the exclusive remedy under the Drain Code. The Court explained that

> a drain commissioner may not, by mere assumption of authority, legally do that which he has no authority to do. If, upon a petition to do what he has a right to do, he may do what he has no right to do, the extent of his authority is measured by his own acts and conduct and not by law. The extent of the authority of the people's public agents is measured by the statute from which they derive their authority, not by their own acts and assumption of authority. The rule is that errors and irregularities in drain proceedings must be taken advantage of by certiorari, but an entire want of jurisdiction may be taken advantage of at any time. The drain commissioner had no jurisdiction to

---

[60] *Id.*

[61] *Id.* at 38-39.

[62] *Id.* at 37-38.

[63] *Id.* at 39.

[64] *Id.*

[65] *Lake Twp v Millar*, 257 Mich 135, 141-142; 241 NW 237 (1932).

construct a sewer any more than to construct a Covert road. No one will contend that if the drain commissioner, when the petition for a drain was filed with him, had laid out an assessment district, established and constructed a Covert road, the plaintiffs would have been without remedy. The same legal question is here presented. The proceedings are void for want of jurisdiction. The decree of the trial court is reversed, and decree will be entered for plaintiffs.[66]

Twenty years later, the Supreme Court in *Patrick v Shiawassee Co Drain Comm'r*[67] again reaffirmed this precedent. The Court addressed the issue of whether the drain commissioner was allowed to enlarge a drain "beyond the determination of the board of determination[.]"[68] The Court stated:

In the case at bar [the drain commissioner's] authority was limited to cleaning out the drain to its original depth as authorized by the board of determination. He had no legal right to deepen or widen the drain or use plaintiffs' lands without condemnation of the same. Under the circumstances of this case it clearly appears that certiorari was not an adequate remedy. It follows that plaintiffs had a right to resort to chancery to restrain defendant from enlarging the drain or taking plaintiffs' lands without condemnation thereof.[69]

Thus, certiorari is not the exclusive remedy under the Drain Code. Although minor errors and irregularities must be challenged by means of certiorari, equity will still provide a remedy when the drain commissioner acts without jurisdiction and there is no adequate remedy at law. A plain reading of MCL 280.161 supports

[66] *Id.* at 141-142.

[67] *Patrick v Shiawassee Co Drain Comm'r*, 342 Mich 257; 69 NW2d 727 (1955).

[68] *Id.* at 263.

[69] *Id.* at 264.

such a conclusion. Section 161 provides in relevant part: "And if any error be found in the proceedings, *the court shall direct the commissioner to correct such error* or errors and then proceed the same as though no error had been made."[70] When an error is so substantial that a drain commissioner cannot correct it, certiorari is an inadequate remedy. Therefore, equity must provide relief.

We note that, although these cases dealt with prior versions of the Drain Code, the procedures and limitations periods for certiorari were the same as they are now.[71] Further, this Court reaffirmed these principles in *Emerick v Saginaw Twp* and *Blakely Drain Improvements Drainage Dist v City of Woodhaven*.[72] In *Emerick*, this Court interpreted a different provision of the Drain Code, MCL 280.483, which provides as follows:

> Neither the final order of determination nor the final order of apportionment shall be subject to attack in any court, except by proceedings in certiorari brought within 20 days after the filing of such order in the office of the chairman of the board issuing the same. If no such proceeding shall be brought within the time above prescribed, the drain shall be deemed to have been legally established and the legality of the drain and the assessments therefor shall not thereafter be questioned in any suit at law or in equity, either on jurisdictional or nonjurisdictional grounds.

This Court noted that "mere irregularities in the proceedings were to be settled under the statute."[73] However, it stated that there are two exceptions to the Drain

---

[70] MCL 280.161 (emphasis added).

[71] See 1923 PA 316; 1929 CL 4902; 1931 PA 318, and 1948 CL 266.11.

[72] *Emerick v Saginaw Twp*, 104 Mich App 243, 247; 304 NW2d 536 (1981), and *Blakely Drain Improvements Drainage Dist v City of Woodhaven*, 112 Mich App 675; 317 NW2d 220 (1982).

[73] *Emerick*, 104 Mich App at 247, citing *Patrick*, 342 Mich 257, and *Kinner v Spencer*, 257 Mich 142; 241 NW 240 (1932).

Code's plain language: fraud and lack of jurisdiction. If either fraud or an entire lack of jurisdiction are properly pleaded, then equity will allow a plaintiff to bring suit.[74]

In *Woodhaven*, this Court again recognized that certiorari is not the exclusive remedy under the Drain Code. This Court relied on *Emerick* and stated: " 'An exception to the plain language of the Drain Code has grown up in Michigan under prior statutory language for cases where fraud is alleged and properly pled. An entire lack of jurisdiction could be challenged in a similar fashion.' "[75]

From this precedent, we conclude that the circuit court properly exercised equitable jurisdiction. Although the Drain Commissioner argues that Elba Township and the Osborn plaintiffs complained of mere technical defects in the proceedings, this argument is unpersuasive. Elba Township and the Osborn plaintiffs are not alleging mere technicalities. Rather, they are challenging the Drain Commissioner's authority to act on the #181-0 Drain petition. As discussed, a petition for consolidation requires 50 signatures.[76] The #181-0 Drain petition only contained five signatures. This is not the type of error that the Drain Commissioner can correct. Without the requisite number of signatures attached to the #181-0 Drain petition, the Drain Commissioner had no authority or jurisdiction to act, and the proceedings establishing the No. 181 Consolidated Drainage District were void.[77] Certiorari was not the only remedy under the

---

[74] *Emerick*, 104 Mich App at 247.

[75] *Woodhaven*, 112 Mich App at 684, quoting *Emerick*, 104 Mich App at 247.

[76] MCL 280.441(1).

[77] See *Grand Rapids & I R Co*, 220 Mich at 479 (holding that an application for the cleaning out of a drain was insufficient on its face to confer jurisdiction on the drain commissioner because it failed to show that the signers were freeholders liable for the assessment for benefits).

Drain Code, and the circuit court properly exercised equitable jurisdiction.

We reverse in part and affirm in part. No costs, a public question being involved and no party having prevailed in full.

M. J. KELLY, P.J., and FITZGERALD, J., concurred with WHITBECK, J.